Louis James BROSICK, Appellant/Cross–
Appellee,

v.

Darlene D. BROSICK, Appellee/Cross–
Appellant.

Nos. 96–CA–2522–MR, 96–CA–2583–
MR (Cross), 96–CA–3445–MR
and 97–CA–0308–MR.

Court of Appeals of Kentucky.

July 24, 1998.

C. Timothy White, Shepherdsville, for Appellant/Cross–Appellee.

Ann W. McAfee, J. Chester Porter & Associates, Shepherdsville, for Appellee/Cross–Appellant.

Before GUDGEL, C.J., and GARDNER and KNOPF, JJ.

## OPINION

KNOPF, Judge:

These are combined appeals and a cross-appeal from a judgment of dissolution, involving findings of dissipation of marital assets, division of marital property, and division of vested contributory pension and retirement plans. Finding that the trial court made insufficient findings as to the amount of the dissipation, and that the trial court neglected to divide certain marital assets, we affirm in part, reverse in part, and remand for further factual findings.

Louis James Brosick (Louis) and Darlene D. Brosick (Darlene), were married in 1959. Three (3) children were born of the marriage, all of whom are now adults. Louis filed a petition for dissolution of the marriage on September 27, 1994, and the trial court entered a decree dissolving the marriage on February 23, 1995. The court referred the issues of division of marital property and maintenance to the domestic relations commissioner. Following extensive discovery, the commissioner conducted a hearing on January 17–19, 1996.

In his report, the commissioner found that neither Louis nor Darlene was entitled to maintenance. The commissioner further concluded that Louis had dissipated marital assets during his seven (7) year relationship with Amy Hardin. However, the commissioner was unable to quantify precisely the degree of dissipation. Consequently, the commissioner recommended that the court award Darlene $24,835.00 more in marital property than Louis. The trial court adopted the commissioner's report over both parties' exceptions.

Subsequently, Darlene's counsel submitted a qualified domestic relations order (QDRO) to divide Louis' pension and retirement plans, as set out in the commissioner's report. Louis objected to the manner in which the plans were to be divided. Following another hearing before the commissioner, the

trial court rejected Louis' exceptions and entered Darlene's tendered QDRO on October 22, 1996. On November 26, 1996, Darlene filed a motion to amend the QDRO because Louis' employer required that the heirs of the alternative payee be specifically named. The trial court entered the amended QDRO on January 14, 1997.

Louis brought an appeal from the trial court's ruling on the issue of dissipation of assets. He also appeals the failure of the trial court specifically to divide certain marital property. Darlene cross-appeals from the trial court's calculation of the amount of dissipation. She also objects to the court's division of certain marital property. Lastly, Louis filed an additional appeal on several issues involving the QDRO. We will consider each issue in order.

■■■■ Louis first contends that the trial court erred in failing to divide the parties' marital property without regard for marital misconduct. Generally, fault of the parties is not to be considered in dividing martial property. KRS 403.190(1). However, a party may not spend marital assets or funds for non-marital purposes, and then expect to receive an equal share from the diminished marital estate. The "fault" considered is not blame for the dissolution of the marriage. Rather, the court will deem the wrongfully dissipated assets to have been received by the offending party prior to the distribution.

■■■ The court may find dissipation when marital property is expended (1) during a period when there is a separation or dissolution impending; and (2) where there is a clear showing of intent to deprive one's spouse of her proportionate share of the marital property. *Robinette v. Robinette*, Ky.App., 736 S.W.2d 351, 354 (1987). Louis asserts that there was no evidence that he spent any funds in anticipation of divorce. In response to this contention, we are unable to improve upon the analysis in the commissioner's report:

The primary issue raised herein is Darlene's claim that Louis has dissipated marital assets as part of his ongoing relationship with Amy Hardin. Darlene alleges that over the course of his relationship

with Amy, Louis spent or gave to Amy in excess of $100,000.00 of marital funds. In support of her position, Darlene submitted a large number of documents, primarily bank statements from the joint account maintained by Louis and Amy during the marriage. Louis admits to maintaining a joint account with Amy and to signing credit applications with her to help her get credit. However, he claims that little in the way of marital funds was deposited to the account, and the account was primarily Amy's.

Having heard and considered the evidence, the Commissioner finds that there is little doubt that Louis dissipated a substantial amount of marital money during the marriage on his relationship with Amy. Louis argues that even if this is true, the dissipation was not done in contemplation of divorce, and therefore would not be considered under Kentucky law. The Commissioner does not agree with this position.

The evidence herein is that during the period of time Louis was dissipating marital assets, he maintained a joint bank account with Amy, held himself out on credit applications as he[r] fiancé, owned real estate jointly with her, conveyed real estate (while falsely stating in the deed that he was unmarried), went to her house in the morning and got her children off to school and daycare, and in all ways conducted himself in a manner consistent with an intention of eventually marrying her, which he in fact has now done. It defies common sense to suggest that during the period of time that he did all this he was not at least contemplating divorce and preparing for his eventual life with Amy. This Commissioner finds that Louis has dissipated assets herein in contemplation of divorce.

Record on Appeal [ROA] at pp. 225–26.

Although the commissioner found sufficient evidence to establish that Louis dissipated marital assets, the commissioner could not make any certain finding as to the amount of the assets dissipated. Instead, the commissioner recommended that the court use its equitable powers to make a property division more favorable to Darlene than to Louis. Louis argues that the trial court erred in crediting Darlene without a specific finding of the amount dissipated. For her part, Darlene contends that the trial court erred in failing to accept all of her evidence regarding the amount of marital assets which Louis spent on Amy.

■ While the circuit court does have the authority to fashion equitable relief where a party has dissipated marital property, that relief must bear some relation to the evidence presented. In the absence of specific findings regarding the amount of the dissipation, we have no way of knowing how the commissioner arrived at the figure credited to Darlene. Consequently, we must remand this matter to the trial court to determine the amount of the dissipation. *Greathouse v. American National Bank & Trust Co.,* Ky. App., 796 S.W.2d 868, 870 (1990).

■ The more fundamental issue on remand concerns the standard of proof necessary to prove dissipation of assets. We conclude that the commissioner's error arose from the standard of proof which he imposed on Darlene. The commissioner required Darlene to demonstrate that Louis made specific deposits to the joint account. In essence, the commissioner required Darlene to prove dissipation by clear and convincing evidence. Furthermore, even though the commissioner believed that it was more likely than not that Louis had dissipated marital assets, the commissioner did not require Louis to account for any of the assets. We conclude that the commissioner erred in his allocation of the burden of proving the dissipation.

Although there are several Kentucky cases discussing the concept of dissipation of marital assets, we find no Kentucky cases directly addressing the standard of proof necessary to prove dissipation. In *Barriger v. Barriger,* Ky., 514 S.W.2d 114 (1974), the wife established that the husband dissipated $25,000.00 in marital property. The former Court of Appeals held that the husband's inability to account for the assets justified the trial court's decision to include the dissipated assets in the parties' net worth. The

current Court of Appeals followed a similar approach in *Culver v. Culver,* Ky.App., 572 S.W.2d 617 (1978). However, neither court discussed the standard of proof in dissipation cases.

We find the reasoning of *Jeffcoat v. Jeffcoat,* 102 Md.App. 301, 649 A.2d 1137 (1994), to be instructive and consistent with Kentucky case law. In *Jeffcoat,* the parties were married for nearly fifteen (15) years, and had managed to accumulate substantial assets even though neither spouse had a large income. The wife established that the husband spent $300,000.00 of the parties' monies in the year following their separation. Nonetheless, the trial court refused to consider the dissipated assets in the division of marital property. Rather, the lower court required the wife to prove fraud, by clear and convincing evidence, in order to show dissipation of assets had taken place.

The Court of Special Appeals of Maryland reversed, stating, "We see no adequate reason to require a higher degree of proof to establish dissipation than any other aspect of marital property. Under a proper standard, the trial court should be able to find dissipation by a preponderance of the evidence." *Id.,* 649 A.2d at 1139–40. The Maryland court then went on to hold that the party alleging dissipation must prove dissipation and the value of the property. *Id.* 649 A.2d at 1140. Once the party alleging dissipation establishes a prima facie case, the burden of proof shifts to the party charged with the dissipation to produce evidence sufficient to show that the expenditures were appropriate. *Id.* 649 A.2d at 1141. *See also, In re: Marriage of Smith,* 128 Ill.App.3d 1017, 84 Ill. Dec. 242, 471 N.E.2d 1008 (2d Distr., 1984).

 We recognize that KRS 403.190(3) creates a presumption that all property acquired during the marriage is marital. This presumption must be rebutted by clear and convincing evidence. *Browning v. Browning,* Ky.App., 551 S.W.2d 823, 825 (1977); *But see, Underwood v. Underwood,* Ky., 836 S.W.2d 439, 441–42 (1992). However, we do not believe that the clear and convincing evidence standard is necessary in dissipation cases. The concept of dissipation requires that a party used

marital assets for a non-marital purpose. The spouse alleging dissipation should be required to present evidence establishing that the dissipation occurred. Once the dissipation is shown, placing the burden of going forward with the evidence on the spouse charged with the dissipation is reasonable because that spouse is in a better position to account for these assets. This analysis pertaining to the shifting of the burden of going forward with the evidence, using the preponderance of the evidence standard, is in accord with the practice implicitly followed in *Barriger v. Barriger, supra.*

In the present case, Darlene presented specific documentary evidence showing that Louis maintained a joint checking account with Amy Hardin, that there were regular deposits made to the checking account in excess of Hardin's income, and that no other persons made deposits to the account. Based upon the evidence, she alleged that Louis made deposits to the account totalling $91,465.46. Darlene further established that Louis had jointly purchased and sold real estate with Hardin during the marriage (totalling $10,389.00), reinvesting the proceeds in other real estate. Louis also failed to account for funds in his credit union account ($7,284.00), or for the IRS withholding from his pension savings account ($6,251.83).

We, like the commissioner, agree that Darlene presented sufficient evidence to raise a reasonable inference that Louis dissipated the assets. Upon remand, the trial court must make a finding concerning the amount of the dissipation proven by a preponderance of the evidence. Thereafter, Louis shall bear the burden of proving that the assets were not expended for an improper purpose.

 Louis next contends that the trial court erred in failing to consider his support of Darlene during the period she pursued her nursing degree. He argues that he is entitled to reimbursement for his contributions toward Darlene's degree. The commissioner found insufficient evidence to support his claim for reimbursement. We agree. In determining the award of marital property, a trial court is authorized to consider the contribution of each spouse to the acquisition of

marital property. KRS 403.190(1)(a). The trial court may consider the contributions of each party toward the acquisition of the marital estate, including the contribution of a spouse toward the other spouse's education or professional degree. *Schmitz v. Schmitz*, Ky.App., 801 S.W.2d 333, 336 (1990).

However, the circumstances surrounding Darlene's education during the marriage do not show an inequality between the parties' contributions to the marital estate. Louis worked throughout the marriage. Darlene remained at home during the first half of the marriage, raising the children and caring for the home. In 1975, Darlene went back to school to obtain an associates' degree in nursing. She completed that degree in 1978 and worked as a nurse until 1987. Darlene then returned to school to obtain higher degrees, completing her master's degree in 1991. She returned to nursing through the parties' separation in 1994. During the period she was working, she contributed her income to the family, and continued to perform housekeeping duties. Darlene also presented expert testimony showing that even with the nursing degree, her earning capacity remains less than Louis' earning capacity. Based upon the evidence presented to the trial court, we cannot find the trial court's denial of Louis' reimbursement claim to be clearly erroneous.

Both Darlene and Louis appeal several issues regarding division of the other marital property. First, Louis asserts that the trial court failed to divide the parties' money market account. Darlene agrees that the money market account was left out of the final property division. Likewise, Darlene contends (and Louis agrees) that the trial court failed to include Louis' work tools in the property division. We will remand these issues to the trial court for division of this account along with the rest of the marital property.

Second, Louis contends that the trial court erred in failing to make a finding as to the amount in Darlene's personal checking account, or to account for those monies in the property division. Darlene initially failed to list the account in her financial disclosure statement. However, the account was disclosed during the commissioner's hearing.

Darlene alleges that she used most of the funds in that account for her living expenses during the separation. She also asserts that the account balance is insignificant. Although she may be correct, the account was clearly a marital asset. The absence of a finding as to the status of Darlene's checking account prevents this court from considering the propriety of the trial court's decision to exclude the account from the final property division. Therefore, we remand this issue for further findings of fact, and, if appropriate, inclusion in the division of marital property.

Finally, Louis raises several issues regarding the division of his pension and retirement plans and the QDRO. He first contends that the trial court improperly divided his pension and retirement plans equally. Apparently, Louis feels that since Darlene received a higher proportion of the other marital property, she is not entitled to an equal division of his pension and retirement plans. Given the trial court's finding that Louis dissipated marital assets, we cannot agree. The trial court is not required to divide equally all marital assets, but only to divide them "without regard to marital misconduct in just proportions considering all relevant factors" KRS 403.190(1). As discussed above, dissipated assets are considered as assets already received by the offending party. Once the court accounts for those assets, the court may divide the remaining assets in such proportions as it deems just.

Louis next submits that the trial court erred in dividing the pension equally, rather than equally dividing the payments. He states that if he returns to work, his benefits will be reduced while Darlene's benefits will not. However, Louis fails to present any authority requiring pension benefits to be divided in the manner he proposes. Indeed, pension and profit sharing plans are valued as of the date of the dissolution decree. *Clark v. Clark*, Ky.App., 782 S.W.2d 56, 62 (1990). It is the pension, not the benefits, which is the marital asset which is divided by the court.

Louis also contends that Darlene reneged on her agreement to divide the pension payments equally. Yet at the time of the parties' separation, Louis had retired from Ford Motor Company and was drawing a monthly pension payment. Any contemplation of an equal division of the pension was based upon the amount of the pension payments being received by Louis at the time of dissolution. Louis wants the amount received by Darlene to be wholly dependent upon his decision to return to work. Such a scheme is unduly complex and in derogation of Darlene's property interest in the pension. Moreover, Louis misses the obvious point that if he returns to work, any future contributions to his pension plan will accrue to his benefit alone. Therefore, we find no merit to Louis' complaints about the division of the pension.

■■■ Louis further objects to the portion of the QDRO which provides that Darlene's heirs shall inherit her share of the pension should she predecease him. Louis correctly notes that Kentucky has not specifically ruled on the inheritability of retirement benefits.[1] Furthermore, any consideration of the issue must take into account the effect of the federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq. See,* Louise E. Graham & James E. Keller, 15 *Kentucky Practice,* Domestic Relations Law, § 15.38, pp. 557–59 (2d ed., 1997).

■■■ We find that the approach taken by the trial court is reasonable and consistent with Kentucky law. A vested pension plan is a form of deferred compensation earned during the marriage. Consequently, it is a marital asset and subject to division by the court. *Foster v. Foster,* Ky.App., 589 S.W.2d 223, 224 (1979). We find no reason to treat deferred compensation benefits differently from any other divisible marital property. Therefore, once the plan is divided between the parties, the non-employee spouse may treat those benefits as her own property, including making a testamentary transfer of the benefits.

Obviously, any such devise must be consistent with the terms of the retirement plan. Moreover, testamentary transfers must be consistent with ERISA and other federal laws regarding retirement benefits. In this case, the plan administrator had no difficulty with allowing Darlene's heirs to inherit her share of the retirement benefits in the event that she predeceases Louis. Additionally, we find no federal law prohibiting such a transfer. As a result, we conclude that the trial court did not err in allowing the QDRO.

Lastly, Louis argues that the trial court failed to follow CR 60.02 in allowing amendment of the prior QDRO. We disagree. The amendment did not change any substantive right of either party. Rather, the plan administrator rejected the prior QDRO because it did not specifically name Darlene's heirs. The amended QDRO merely corrected the oversight. Although Darlene brought her motion to amend pursuant to CR 60.02, we find that CR 60.01 permits such corrections of clerical mistakes in a judgment or order. The trial court retained jurisdiction to enter the amended order.

Accordingly, the judgment of the Bullitt Circuit Court is affirmed in part, reversed in part, and remanded for further factual findings and proceedings consistent with this opinion.

All concur.

---

1. Louis contends that the trial court exceeded its authority in "making new law" on this issue. We disagree. Trial courts are frequently called upon to resolve legal matters of first impression where no controlling authority exists. Although any such ruling is subject to appellate review, trial courts have the authority to decide such matters for the cases before them.