**Lorene B. HESKETT, Appellant**

v.

**John P. HESKETT, Appellee.**

**No. 2006–CA–001900–MR.**

Court of Appeals of Kentucky.

Jan. 4, 2008.

---

Steven G. Bolton, Frankfort, KY, for appellant.

Charles E. Jones, Frankfort, KY, for appellee.

Before THOMPSON and WINE, Judges; HENRY,[1] Senior Judge.

## OPINION

THOMPSON, Judge.

Lorene B. Heskett appeals from an order of the Franklin Family Court awarding her ex-husband, John P. Heskett, one-half of the equity in the marital residence as his share of their marital property. Having concluded that the family court erred, we reverse and remand.

John and Lorene were married on December 9, 1955, in Bolivar, Missouri. During the course of their marriage, John, who is an ordained minister, served as the pastor of numerous churches in several states. Lorene primarily worked as a homemaker which included raising the couple's two children, who are now adults. When she was not working at the home, Lorene served as the "pastor's wife" which entailed teaching Bible study, visiting church members, and participating in various women's associations.

In September 2002, after nearly forty-seven years of marriage, John informed Lorene that he desired a separation and that their previously scheduled upcoming vacation would be taken separately. Upon her return from vacation, John presented Lorene with a property division proposal that he asserted constituted an equal division of their marital property. After Lorene disagreed with the equality of the division, John presented Lorene with a series of revised proposals until a mutually satisfactory proposal was reached.

Under the terms of their *unsigned* (emphasis added) property division proposal (the "proposal"), dated October 10, 2002, each party received a total of $76,165.84 in assets as their own separate property. The proposal further provided that the parties would equally share their combined total monthly social security benefit payments. Finally, the proposal provided that each party would equally share in the monthly income payment from one of their seven annuities.[2] In November 2002, following the division of their property pursuant to the proposal, John and Lorene physically separated.

After several months, in May 2003, the couple began communicating and decided that they wanted to attempt a reconciliation of their marriage. John, who had been living in a trailer, moved into Lorene's apartment in Indiana. Subsequently, in November 2003, the couple moved to Frankfort, Kentucky, where John had secured a job as a director in a church association. By the end of November, they had purchased a residence at 117 Turnberry Drive for $126,000. At the evidentiary hearing, the parties stipulated that the residence had a fair market value of $130,000.

As a down payment, Lorene withdrew $63,310.63 from her certificates of deposit, which had been opened from the proceeds of the October 2002 property division and applied the amount against the purchase price of the residence. From his property division proceeds, John applied $8,500 to the residence's purchase price. Further, at the time of this purchase, the couple opened a joint bank account, filed joint

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes 21.580.

2. Although John disagreed, the trial court found that the parties owned seven annuities prior to their October property division. However, at the time of the division, only one of the annuities had reached maturity which was the only one accounted for in the parties' proposal.

income taxes, and deeded their residence in both of their names with joint survivorship.

However, their reconciliation was short-lived. In less than a year, John opened an individual bank account while Lorene retained the former joint account as her own individual account. Several months later, following the mortgage payment for January 2005, John refused to contribute to any future mortgage payments. Following his refusal to pay, Lorene paid the monthly mortgage and reduced the outstanding principal balance of the mortgage loan by $5,591. On April 18, 2005, John moved from the residence.

On April 22, 2005, Lorene filed a petition for the dissolution of the marriage. Subsequently, the trial court conducted an evidentiary hearing regarding Lorene's petition for divorce and division of property. During the hearing, Lorene introduced numerous documents tracing the allocation of the proceeds that she received from the October 2002 property division. Beyond a document that provided "Total Portfolio Value: $8,466.57," John did not introduce any documentation regarding the proceeds he received.

Following the hearing, the trial court issued an interlocutory decree of dissolution on December 29, 2005, reserving all other issues for further disposition by the court. On June 27, 2006, the trial court issued its findings of fact, conclusions of law, and an order dividing the parties' property and awarding permanent periodic maintenance.

In its findings of fact, the trial court wrote, in pertinent part, the following:

25. According to Plaintiff's Exhibit 1, each of them was to receive approximately $76,000.00 of the parties' assets. In addition, the parties planned to equalize what each would be receiving in Social Security benefits and from the one annuity that was then paying a monthly benefit.

27. Both of the Hesketts testified that each of them actually received the property that they were designated to receive in Plaintiff's Exhibit 1. They accomplished the division.

30. After the 2002 separation Mrs. Heskett put her $76,000.00 share of the division in the bank. As noted herein, much of Mr. Heskett's share was not readily accessible by him. It is not entirely clear what he did with the "cash" he received in the division.

34. .... The current outstanding indebtedness [owed on the mortgage loan] is approximately $40,520.00.

In its conclusions of law, the trial court wrote, in pertinent part, the following:

4. The Petitioner should be awarded the former marital residence at 117 Turnberry Drive, Frankfort, Franklin County, Kentucky.... She shall further have restored to her the sum of $5,591.00 representing her reduction of the outstanding principal amount of the mortgage since January 5, 2005. *Gibson v. Gibson,* Ky.App. 597 S.W.2d 622 (1980). The [Petitioner] should pay to the [Respondent] one-half of the equity in the property as his marital share.

6. In the instant case, the parties have been married for over 50 years and both are well past the usual age of retirement. The husband has been the primary bread winner throughout the marriage, but the wife has clearly been a lifelong partner in his various ministries, has kept the home and raised the children and generally been a significant asset. *There can be no doubt that the parties should divide equally the marital property subject to division by this Court outside the scope of the previous*

*separation agreement between them* (emphasis added).

7. The Petitioner shall therefore pay to the Respondent for his interest in the residence at 117 Turnberry Drive the sum of $41,944.50.

15. In order to provide for the Petitioner reasonable needs, it is hereby ordered that the Petitioner be awarded permanent periodic maintenance effective the date of the filing of the final decree herein. In addition, the Petitioner shall continue to receive $109.29 per month paid to her from the annuity in which she is listed as the principal owner and her social security. The Respondent shall continue to pay the Petitioner supplemental health premium under the terms of her current coverage issued by AARP.

In its order, the trial court wrote, in pertinent part, the following:

5. The parties shall be entitled to an equal division of the marital property subject to division by this Court.

6. The parties shall equally divide their combined Social Security incomes and the monthly annuity payments received. The annuities shall be held in the same names as they are presently held.

Lorene timely filed a motion to alter, amend or vacate pursuant to Kentucky Rules of Civil Procedure (CR) 59.05, asserting that the court failed to classify her $63,310.63 down payment on the residence as non-marital property exempted from division pursuant to KRS 403.190(1). Because her down payment was from the proceeds of the October 2002 property division, which produced only non-marital property, Lorene contends that the down payment was traceable non-marital property that should have been restored to her prior to the division of the marital interest in the residence. The trial court denied her motion and this appeal followed.

Lorene's sole assignment of error is that the trial court failed to restore her full non-marital interest in the marital residence. Lorene contends that she and John entered into a valid property division agreement in October 2002, and that this agreement controlled the classification and distribution of each party's interest in the marital residence. Specifically, when she and John divided their marital property with each party receiving $76,165.84 as provided in their agreement, Lorene contends that they no longer possessed marital property but only non-marital property pursuant to KRS 403.190(2)(d).[3]

Accordingly, Lorene asserts that her $63,310.63 down payment, emanating from the proceeds of her portion of the October 2002 property division, was a non-marital investment into the marital residence. Thus, she contends that the trial court was required to restore this non-marital amount to her before dividing and distributing the couple's marital interest in the residence.

█ On appellate review of a trial court's ruling regarding the classification of marital property, we review *de novo* because the trial court's classification of property as marital or non-marital is based on its application of KRS 403.190; thus, it is a question of law. *Holman v. Holman,* 84 S.W.3d 903, 905 (Ky.2002).

█ After reviewing the record, we conclude that the trial court correctly disregarded the proposal as an agreement that created non-marital property. In *Carter v. Carter,* 656 S.W.2d 257, 258 (Ky.App.

---

**3.** KRS 403.190(2)(d) provides that "[f]or the purpose of this chapter, 'marital property' means all property acquired by either spouse subsequent to the marriage except ... [p]roperty excluded by valid agreement of the parties."

1983), the court held that "[a]ny settlement agreement after the marriage attempting to dispose of the marital property must be, according to K.R.S. 403.180, in writing and signed by the parties to be effective."

In the instant case, although the couple drafted a document memorializing their agreement, neither party signed the document. Therefore, despite Lorene's argument otherwise, the document cannot serve as a valid, enforceable property settlement agreement creating two non-marital estates.

■ Moreover, even if we assume that the proposal was a valid property settlement agreement, it was invalidated when the couple reconciled their marriage in November 2003. If a couple intends to attempt a true reconciliation and resumes relations as husband and wife, the previously valid settlement agreement is voided for all purposes and cannot be revived by a subsequent separation. *Peterson v. Peterson,* 583 S.W.2d 707, 710 (Ky.App.1979).

In this case, the Hesketts reconciled their marriage and intended that their reconciliation be permanent. They moved to Frankfort, and purchased a residence in both their names with joint survivorship. They opened a joint bank account, filed joint tax returns, and otherwise lived as husband and wife. This constitutes a true reconciliation which operates to nullify a prior property settlement agreement. While we recognize that John failed to argue this theory at trial, an appellate court may affirm the decision of a trial court for any reason sustainable under the record. *Brewick v. Brewick,* 121 S.W.3d 524, 527 (Ky.App.2003).

■ Having concluded that the Hesketts' reconciliation abrogated their separation agreement, we note that not all reconciliations will abrogate a separation agreement. *Peterson* makes clear that a

fully executed settlement agreement is only abrogated if the parties intended that their reconciliation would revoke the agreement. *Id.* at 709. However, unless the parties' intentions are otherwise, an executory settlement agreement is abrogated by the reconciliation and resumption of cohabitation by the parties to the separation agreement. *Id.*

■ Although we have concluded that the proposal did not create non-marital estates, given the extreme facts of this case, we nevertheless believe that the trial court erred by failing to fairly and justly divide the Hesketts' marital property. While the trial court equally divided the Hesketts' marital property, this ruling ignores the significance of the parties' 2002 property division and John's subsequent dissipation of his share of the marital property. Accordingly, under the facts found in the record, the trial court failed to justly divide the parties' marital property.

■ Dissipation occurs when "marital property is expended (1) during a period when there is a separation or dissolution impending; and (2) where there is a clear showing of intent to deprive one's spouse of her proportionate share of the marital property." *Brosick v. Brosick,* 974 S.W.2d 498, 500 (Ky.App.1998)(citing *Robinette v. Robinette,* 736 S.W.2d 351, 354 (Ky.App. 1987)).

In this case, Lorene provided extensive documentation accounting for the bulk of the proceeds which she received from the October 2002 property division. These documents supported her testimony that she had provided substantially for the couple's living expenses, including paying bills, purchasing furniture for their residence, and providing the majority of the down payment on their residence.

However, despite receiving over $76,000 in marital assets in the fall of 2002, John

introduced virtually no documentation regarding the disposition of those proceeds. As a result of this lack of evidence, the trial court expressed frustration at John's inability to produce sufficient financial documentation despite having had months to prepare for the hearing. Most illustrative, after presiding over this case for over a year and conducting an extensive evidentiary hearing, the trial court wrote in its findings of fact that "[i]t is not entirely clear what he [John] did with the 'cash' he received in the division." There was an utter absence of evidence in the record to account for the disappearance of John's proceeds from the couple's property division.

Based on the facts, we conclude that Lorene was entitled to be restored to her $63,310.63 from the down payment on the marital residence. Although the money was marital, Lorene's proceeds from the October 2002 marital division remained fairly intact for the trial court to justly divide. However, John's $76,165.84 was largely expended in an unknown manner, and his complete failure to account or validly justify the disappearance of substantially all of his division proceeds constitutes a dissipation of marital assets. *Brosick,* 974 S.W.2d at 500.

Additionally, while we recognize that the trial court attempted to equally divide the parties' property, KRS 403.190(1) requires courts to divide marital property "in just proportions," which does not necessarily equate with an equal division of marital property. *Russell v. Russell,* 878 S.W.2d 24, 25 (Ky.App.1994). In fact, there is not even a presumption that marital property be equally divided in a marriage dissolution proceeding. *Id.*

In this case, the trial court placed great emphasis in the equal division of the Hesketts' marital property. While this result can be the most appropriate at times, under the extreme facts of this case, the equal division of the Hesketts' marital property cannot be considered a "just" division of the parties' marital property. Although we recognize that trial courts have broad discretion in dividing marital property, based on our analysis of the unique facts of this case, equity demands that we conclude that the trial court abused its discretion. *Bernard v. Russell County Air Board,* 747 S.W.2d 610, 612 (Ky.App.1987).

Accordingly, we reverse the order of the trial court with respect to the division of the Hesketts' marital property.

For the foregoing reasons, the order of the Franklin Family Court is reversed, and this case is remanded for further proceedings consistent with this opinion.

ALL CONCUR.