RENDERED:  FEBRUARY 17, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0387-MR

WILLIAM GORDON CUMMINGS                    APPELLANT

                 APPEAL FROM MCCRACKEN CIRCUIT COURT
v.             HONORABLE DEANNA WISE HENSCHEL, JUDGE
                 ACTION NO. 20-CI-00732

SHERRY JEAN CUMMINGS                      APPELLEE

OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, ECKERLE, AND KAREM, JUDGES.

ECKERLE, JUDGE:  William Gordon Cummings (Husband) appeals from a

judgment of the McCracken Family Court dividing assets as part of the dissolution

of his marriage to Sherry Jean Cummings (Wife).  We agree with Husband that

Wife had the burden of accounting for marital jewelry in her possession at the time

of separation.  Since the Family Court failed to assign her the burden of proof on these items and failed to make sufficient findings concerning the items not returned, we conclude that the Family Court abused its discretion in its division of that marital property.  However, we further conclude that the Family Court did not clearly err or abuse its discretion in its division of the marital bank accounts or the proceeds from the sale of Husband's veterinary practice.  Hence, we affirm in part, reverse in part, and remand for additional findings and entry of a new judgment with respect to the division of the jewelry.

## I.      Facts and Procedural History

Husband and Wife were married in February 2001.  No children were born of the marriage, but both parties had adult children from previous marriages. Husband owned and operated a veterinary clinic since 1969.  Wife began working at the clinic 1998.  She continued to work for the clinic after the marriage.  She testified that she was never paid for her employment, but there was evidence she regularly received money from the clinic during the marriage.  At the time the final decree was entered, Wife was 73 years old, and Husband was 79 years old.

The parties separated for a short period in 2018, and then again in 2019.  Wife filed this petition for dissolution of the marriage on November 2, 2020.  The Family Court entered an interlocutory decree of dissolution on April 20,

2021, reserving for later adjudication the issues relating to division of property, allocation of debts, maintenance, and attorney fees.

Thereafter, the parties entered into an agreed mediation order, but were unable to resolve the most significant disputed matters. The relevant disputed issues concerned the valuation and division of marital jewelry, the division of marital bank accounts, and the valuation and division of the marital portion of the veterinary practice. The Family Court conducted periodic case management conferences, and the parties engaged in discovery on the disputed issues.

Those matters proceeded to a bench trial on September 17, 2021. The Family Court entered a final hearing order and supplemental decree on January 11, 2022, resolving all disputed issues. Thereafter, Husband filed a motion to correct a clerical error in the decree and a motion to alter, amend, or vacate the order pursuant to CR[1] 59.05. In an order entered on March 8, 2022, the Family Court granted the motion to correct a clerical error involving a mathematical error in calculating the total amount to be divided. However, it denied Husband's motion to modify other portions of the judgment. This appeal followed. Additional facts will be set forth below as necessary.

---

[1] Kentucky Rules of Civil Procedure.

## II.     Standard of Review

Husband argues that the Trial Court abused its discretion in its division of the marital jewelry and bank accounts.  When dividing martial property in a dissolution proceeding, the Family Court must perform the following steps: (1) categorize each piece of contested property as either marital or non-marital; (2) assign each party's non-marital property to that party; and (3) equitably divide the parties' marital property.  *Travis v. Travis*, 59 S.W.3d 904, 908-09 (Ky. 2001).  Trial Courts have broad discretion in dividing marital property, and this Court may not disturb a Trial Court's ruling on the division of marital property unless it has abused its discretion.  *Smith v. Smith*, 235 S.W.3d 1, 6 (Ky. App. 2006).  "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).  More specifically, a court abuses the discretion afforded it when "(1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision . . . cannot be located within the range of permissible decisions."  *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004) (emphasis and citations omitted).

## III.    Division of Jewelry

Husband first argues that the Family Court failed to value and divide the parties' jewelry properly because Wife failed to turn over several items for

valuation as directed. It was undisputed that the parties purchased a large amount of jewelry and artwork during the marriage. The parties also agreed that most of the jewelry was stored in a suitcase in their cabin in Illinois. Husband testified that the suitcase went missing from the cabin after the parties separated. At trial, Wife admitted to taking the suitcase from the cabin when they separated in 2018.

The parties did not maintain a system of what jewelry was stored at a particular location and how much jewelry they owned at the time of separation. However, there were photographs of the jewelry, which the parties used to determine what jewelry had been turned over prior to trial. At a case management conference on April 19, 2021, Husband stated his desire to inventory the jewelry that Wife had taken when the parties separated. He also stated that the jewelry would not be covered by his insurance unless it was in his possession. At the conclusion of the hearing, the Trial Court directed Wife to provide all jewelry in her possession to Husband's counsel by May 7, 2021. The Family Court's order also provided that, once inventoried, the jewelry and other property were to be placed in Husband's possession so that he could place them in a safe, insured location.

At a later case management hearing on August 24, 2021, Husband advised the Family Court that Wife had not produced all of the jewelry by May 7.

Wife's counsel admitted that she retained possession of four items. The Family Court directed her to turn over the remaining items by September 2 for appraisal.

At trial, Wife stated that she turned over all jewelry in her possession with the exception of a diamond necklace valued at $13,000.00, a diamond love bracelet upon which she did not place a value, a yellow diamond ring valued at $26,500.00, and a ring and other silver jewelry valued at $4,070.00. Husband produced receipts or invoices for all of the jewelry purchased through Gem Shopping Network and America's Auction Network. Based on a comparison between the items returned by Wife and those invoices, he alleges that the total value of the jewelry not returned was $477,937.00.

In its findings, the Family Court noted that there was no reliable evidence about the disposition of the jewelry that was not accounted for at trial. Nevertheless, the Family Court concluded:

> The Court does find that certain items of jewelry were not produced by the wife to the husband as ordered by this Court. Photographs of jewelry provided to counsel for the husband from counsel for the wife prior to the April 2021 Case Management Conference show items of jewelry that were not produced to the husband on May 7, 2021, including a large diamond necklace and numerous rings. The Court finds that, unless specifically noted above, all remaining jewelry is marital and shall be sold in an agreeable manner and the parties shall equally divide the proceeds.

In ruling on Husband's CR 59.05 motion, the Family Court stated that Wife did not have the burden of proving what happened to the jewelry simply because it was not produced prior to trial. The Family Court noted the testimony that the parties purchased, sold, returned, and gave away a significant amount of jewelry during the marriage. Consequently, the Family Court declined to presume that the missing jewelry remained in her possession.

Husband argues that the Family Court failed to account for the missing jewelry properly. As noted, the Family Court found that Wife failed to comply with its orders to return all of the jewelry prior to trial. "Dissipation occurs when 'marital property is expended (1) during a period when there is a separation or dissolution impending; and (2) where there is a clear showing of intent to deprive one's spouse of her proportionate share of the marital property.'" *Heskett v. Heskett*, 245 S.W.3d 222, 227 (Ky. App. 2008) (quoting *Brosick v. Brosick*, 974 S.W.2d 498, 500 (Ky. App. 1998)). The party claiming dissipation must prove, by a preponderance of the evidence, that dissipation occurred and the value of the property. *Brosick*, 974 S.W.2d at 502. "Once the party alleging dissipation establishes a *prima facie* case, the burden of proof shifts to the party charged with the dissipation to produce evidence sufficient to show that the expenditures were appropriate." *Id.* If a party is proven to have dissipated marital assets, "the court

-7-

will deem the wrongfully dissipated assets to have been received by the offending party prior to the distribution." *Id.* at 500.

In this case, Husband presented extensive documentary evidence showing the jewelry that the parties acquired during the marriage. He also presented considerable evidence of the value of such jewelry through receipts and invoices. Wife admitted that she took possession of most of the jewelry at the time of their first separation. And Wife offered no evidence about what happened to the jewelry while it was in her sole possession, even after the Family Court ordered it returned. Under these circumstances, it would have been impossible for Husband to prove that specific items were still held by the parties at the time Wife removed them.

Therefore, we conclude that Husband met his burden of showing that the jewelry remained in Wife's possession at the time of trial. Since Wife did not produce the property as directed, the burden shifted to her to account for those items. She accounted for four items, and the trial court awarded those items to her. However, she did not attempt to account for the numerous other items that Husband alleged were in her possession.

Wife correctly notes that the Family Court ordered all jewelry to be sold. She contends that Husband will not be injured until such time as any allegedly missing jewelry is not included in the sale. However, the Family Court's

judgment provides no mechanism to require her to account for those items. Indeed, the Family Court expressly declined to make a finding as to that jewelry, even though it acknowledged that she remained in possession of at least some of the disputed items. If Wife does not produce the items for sale, then she would be rewarded for her failure to comply with the Family Court's orders. Moreover, Wife would unfairly benefit by sharing in an equal division of the proceeds from the sale of the other marital jewelry. As a result, the order directing sale of "all remaining jewelry" fails to identify adequately the property to be sold and divided.

Therefore, the Family Court's judgment regarding the jewelry must be set aside. On remand, Wife will have the burden of proof to account for the items of jewelry that Husband has identified. The Family Court shall make findings whether those items of jewelry remained in Wife's possession following separation. If the Family Court finds that Wife did not account for those items, it shall determine the value of such jewelry and assign those amounts to her as part of her share of the marital property. Husband will be entitled to a credit for those amounts in the division of the proceeds from the sale of other marital jewelry.

## IV. Division of Marital Bank Accounts

### a. Finding as to Joint Efforts of the Parties

Husband next argues that the Family Court erred in its division of the marital bank accounts, resulting in an inequitable division of marital property.

KRS[2] 403.190(3) establishes a presumption that all property acquired during the marriage is marital. KRS 403.190(1) grants the Trial Court wide discretion to divide the marital property in "just proportions" after considering all relevant factors. *Smith*, 235 S.W.3d at 6. Among other factors, KRS 403.190(1)(a) directs the Trial Court to consider "[c]ontribution of each spouse to acquisition of the marital property . . . ."

Husband contends that the Family Court erred in finding that Wife made substantial contributions to the acquisition of marital property. He notes that he operated the veterinary clinic for more than 30 years prior to the marriage, and he came to the marriage with substantial assets. In contrast, Wife came to the marriage with very few assets. While she continued to work for the clinic during the marriage, Husband points out that she regularly received money from the clinic in lieu of a salary. In contrast, he notes evidence of Wife's spending during the marriage, including gifts to family members. Under these circumstances, he contends that the Family Court's equal division of the bank accounts was manifestly inequitable.

We agree with Husband that there was evidence that would have supported a different division of the marital assets. However, the Family Court's

---

[2] Kentucky Revised Statutes.

findings on this point were not clearly erroneous. The Family Court found that Wife "worked diligently for the clinic" and also cared for the parties' cattle on their farm. There was no evidence that she was formally compensated for these services during the marriage.

Except for the division of the proceeds from the sale of the veterinary clinic, Husband does not argue that he traced his non-marital property into the marital bank accounts held at the time of separation. Thus, there was no need for the Family Court to determine whether the increase in value of those funds was attributable to the joint efforts of the parties. *See Travis*, 59 S.W.3d at 910-11. Furthermore, the parties were married for nearly 20 years, which warrants a reasonable inference that most of the assets were marital. Consequently, we cannot find that the Family Court clearly erred or abused its discretion in its equal division of most marital assets.

### b. Division of Proceeds from the Sale of the Veterinary Clinic

Husband separately argues that the Family Court abused its discretion in its division of the proceeds of the sale of the veterinary clinic. He purchased the practice in 1969 and operated it continuously until 2020. After the parties separated, Husband sold the veterinary practice to Dr. Fred Fleshman, a long-time employee of the practice. The sale of the practice did not include the real property, which Husband retained and leased to Dr. Fleshman. In addition, the sale

-11-

agreement provided that Dr. Fleshman would retain Husband as an employee at a salary of $50,000.00 per year. Dr. Fleshman testified that the revenue and business of the practice had remained constant between 2001 and the current date.

Husband also presented the report and deposition of Dr. William Crank, a retired veterinarian who specializes in the buying, selling, and valuation of veterinary practices. Husband and Dr. Fleshman retained Dr. Crank during their negotiations for the sale of the practice. Dr. Crank valued the practice at $298,887.00, with $83,530.00 being the tangible value of equipment and inventory, and goodwill being $215,547.00. Dr. Fleshman paid the purchase price of $311,887.00 for the clinic, which was offset by a $19,241.05 payment from Husband.

At the time of the final hearing, the remaining $292,645.95 was being held for division and payment of taxes. After payment of taxes, the Family Court allocated 60%, or $135,489.57, to Husband and 40%, or $90,326.38 to Wife. Husband primarily focuses on missing records from the practice that would have more clearly established the value of the practice at the time of the marriage. He notes that Wife served as bookkeeper for the practice during this period and had access to those records. He also notes that many records and financial items disappeared when Wife left the clinic in 2018. Since these missing records made it more difficult to establish his non-marital interest in the clinic, Husband argues

-12-

that the Family Court should have presumed that the records would have supported his non-marital claim.

But in making its division of the proceeds from the sale of the clinic, the Family Court did not consider the value of the clinic at the time of the marriage. As noted above, the Family Court concluded that most of the sale price was attributable to ongoing enterprise goodwill, which would be considered marital. In reaching this determination, the Family Court examined *Gaskill v. Robbins*, 282 S.W.3d 306 (Ky. 2009), in which the Kentucky Supreme Court addressed the divisibility of the value of goodwill in a closely-held professional practice. The Supreme Court noted that "[t]he question of how to value goodwill of a business has been a source of contention for many years, with trial courts left to decipher competing and frequently inconsistent theories and accounting practices into something meaningful." *Id.* at 312. Although it is generally accepted in existing Kentucky law that goodwill is a factor to be considered in arriving at the value of a business, the Supreme Court found no consistent Kentucky authority whether goodwill can be divided between the business and the individual. *Id.*

To address this matter of first impression, the Supreme Court considered approaches from other states. The Court found the analysis of the

Supreme Court of West Virginia in *May v. May*, 214 W.Va. 394, 589 S.E.2d 536

(2003), to be especially useful:

> In *May*, the Supreme Court of West Virginia found from its survey that 13 courts made no distinction between personal and enterprise goodwill, 5 courts held that goodwill is not a part of marital property, and 24 states differentiated between personal and enterprise goodwill. . . . The *May* court joined the 24 jurisdictions that distinguish between enterprise and personal goodwill. In reaching its decision, the court relied substantially on an opinion of the Supreme Court of Indiana, which explained in detail the rationale behind distinguishing between personal and enterprise goodwill as follows:
>
>> Goodwill has been described as the value of a business or practice that exceeds the combined value of the net assets used in the business. Goodwill in a professional practice may be attributable to the business enterprise itself by virtue of its existing arrangements with suppliers, customers or others, and its anticipated future customer base due to factors attributable to the business. It may also be attributable to the individual owner's personal skill, training or reputation. This distinction is sometimes reflected in the use of the term "enterprise goodwill," as opposed to "personal goodwill."
>>
>> Enterprise goodwill is based on the intangible, but generally marketable, existence in a business of established relations with employees, customers and suppliers. Factors affecting this goodwill may include a business's location, its name recognition, its business reputation, or a

-14-

variety of other factors depending on the business. Ultimately these factors must, in one way or another, contribute to the anticipated future profitability of the business. Enterprise goodwill is an asset of the business and accordingly is property that is divisible in a dissolution to the extent that it inheres in the business, independent of any single individual's personal efforts and will outlast any person's involvement in the business. It is not necessarily marketable in the sense that there is a ready and easily priced market for it, but it is in general transferrable to others and has a value to others.

. . .

In contrast, the goodwill that depends on the continued presence of a particular individual is a personal asset, and any value that attaches to a business as a result of this "personal goodwill" represents nothing more than the future earning capacity of the individual and is not divisible. Professional goodwill as a divisible marital asset has received a variety of treatments in different jurisdictions, some distinguishing divisible enterprise goodwill from nondivisible personal goodwill and some not.

*Gaskill*, 282 S.W.3d at 313-14 (quoting *Yoon v. Yoon*, 711 N.E.2d 1265, 1268-70

(Ind. 1999)).

In the current case, the Family Court applied this analysis to conclude that the goodwill associated with the sale of the veterinary practice was enterprise goodwill, not personal goodwill.

> Dr. Fleshman testified that he found benefit in retaining the existing location, name, employees and current client list of the clinic as being its source of value. He testified that he expected to have just as strong of a business after [Husband] fully retires and noted that many of the current patients come to see him rather than [Husband] because of his own relationships. Part of the sale agreement required Dr. Fleshman to retain [Husband] at a salary of $50,000.00 per year which indicates that his future earning capacity has already been accounted for and would not have figured into the sale price. In the testimony of Dr. Crank, the broker who negotiated the sale between [Husband] and Dr. Fleshman, he indicated that the only ongoing value provided by [Husband] was the use of his name and the existence of the current clientele, both of which are factors that are clearly enterprise rather than personal goodwill.
>
> . . . Considering the fact that the clinic would have no value but for the ongoing marital efforts of the parties and that the only goodwill that could have factored into the sale price was enterprise goodwill, the sales proceeds from the sale of the clinic are determined to be marital in nature.

Husband does not take issue with any of these findings. Since the Family Court found that the value of the practice was mostly attributable to ongoing enterprise goodwill, it properly concluded that the sale proceeds were marital and subject to division. Furthermore, there was no evidence that the equipment and inventory of the clinic included any substantial non-marital

-16-

component. As a result, we find no indication that the Family Court's 60-40 split of those proceeds amounted to an abuse of its discretion.

## V.  Conclusion

Accordingly, we reverse the judgment of the McCracken Family Court with respect to its valuation and division of the marital jewelry. On remand, the Family Court shall assign to Wife the burden of proving the disposition and value of any items of jewelry not turned over for sale as required by the Family Court's orders. The Family Court shall make findings as to the items that Wife did not sufficiently account, the value of those items, and the credit to which Husband is entitled for his share of the proceeds from the sale of the jewelry. We affirm the Family Court's judgment in all other respects.

ALL CONCUR.

BRIEF FOR APPELLANT:

Tiffany Gabehart Poindexter
Paducah, Kentucky

Bradly A. Miller
Paducah, Kentucky

BRIEF FOR APPELLEE:

Joseph B. Roark
Paducah, Kentucky