RENDERED:  JANUARY 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0266-MR

JAMES EVERETTE MAY                                        APPELLANT

v.

APPEAL FROM BOONE FAMILY COURT
HONORABLE KENDRA L. MCCARDLE, JUDGE
ACTION NO. 19-CI-01387

LISA SHANNON MAY                                          APPELLEE

OPINION
AFFIRMING IN PART; VACATING AND REMANDING IN PART

** ** ** ** **

BEFORE:  CETRULO, LAMBERT, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  Appellant James Everette May ("James") appeals the Boone

Circuit Court's partial denial of his Kentucky Rule of Civil Procedure ("CR")

59.05 motion to alter, amend, or vacate the December 2022 Supplemental Decree

and Supplemental Findings of Fact.

# I.    FACTUAL AND PROCEDURAL HISTORY

James and Appellee Lisa Shannon May ("Lisa") were married in June 1992 and had one child during the marriage. In October 2019, James filed a petition for dissolution, and the parties separated in December 2019. Two and one-half years later, the family court granted James's motion to bifurcate and entered a Decree of Dissolution. The court reserved jurisdiction on the remaining issues: allocation of assets, debts, and spousal maintenance.[1] The trial began in November 2022 and was continued in progress to December 2022 because Lisa had a medical issue. The trial focused on four main facets of the parties' property: the marital residence; spousal maintenance; vehicles and miscellaneous assets; and retirement, financial accounts, and life insurance.

*The Marital Residence*

At trial, Kimberly Moore ("Appraiser Moore"), an appraiser for the property located at 9971 Calava Court ("Marital Residence"), testified that she used comparative sales to appraise the Marital Residence and found the property to be worth $310,000. James testified that Lisa had continued to live at the Marital Residence since the parties separated. During that time, James paid most of the expenses for the Marital Residence, including the mortgage and utilities. As of the

---

[1] Before trial, the parties' child emancipated; therefore, issues of child custody and support were not addressed at trial.

date of trial, the principal balance of the mortgage was approximately $130,000. The equity, therefore, was approximately $180,000. James explained that he wanted to maintain the residence for Lisa and continue paying the mortgage payment, including escrow, as part of his spousal maintenance obligation. James requested that he be given 90 months to pay off the balance of the mortgage in full; however, Lisa testified that she wanted the mortgage paid off immediately so she would not be beholden to James.

*Spousal Maintenance*

James testified that at the beginning of the dissolution proceedings, his salary was $143,000 per year. As of June 2022, however, his salary had increased to $170,000 per year. In addition to his base salary, James received annual bonuses during the marriage that averaged $40,576.50, gradually increasing from 2017 to 2020. James testified that Lisa was currently unemployed and had not applied for disability payments. As such, after the parties separated, James deposited $2,000, sometimes more, biweekly into the parties' joint bank account for Lisa to use. Additionally, James had been paying the mortgage payment of $1,184 per month on the Marital Residence as well as Lisa's car insurance payment of $35 per month.

Lisa did not submit any monthly expenses or file a financial disclosure statement. James testified that the parties' standard of living was

-3-

modest, and the court acknowledged that no evidence was presented to indicate that Lisa had not or would not be able to maintain that standard of living post-divorce. James proposed that he continue to pay the mortgage as well as $3,000 per month to Lisa for 90 months.

*Vehicles and Miscellaneous Assets*

James testified that he owned a 2019 Mercedes GLC, valued at $37,025. At the time of trial, he owed $23,023.60 on that car loan. Lisa had a 2013 Honda Odyssey, valued at $12,825 with no debt owing. Further, James had a Delta Skymiles account worth $1,771.08 and a health savings account worth $1,052.04.

*Retirement, Financial Accounts, and Life Insurance*

James owned a Fidelity 401k that was a partial marital asset. Additionally, James testified that the parties had a joint bank account and a joint Fidelity Cash Management Account ("CMA") during the marriage. In February 2020, Lisa had transferred $49,231.45 from the joint CMA to a separate account solely in her name. In response, James transferred the remaining $48,500 from the joint CMA into his individual CMA (which totaled $178,286.21). Additionally, James testified regarding his six life insurance policies, all of which listed Lisa as the primary beneficiary and totaled $1,755,000 in coverage.

Following trial, James filed Proposed Findings of Fact and Conclusions of Law, which the family court largely relied upon to enter its Supplemental Decree and Supplemental Findings of Fact (together, "2022 Supplemental Decree").[2] In the 2022 Supplement Decree, the family court accepted Appraiser Moore's testimony on the fair market value of the Marital Residence and found the property to be worth $310,000. The court accepted James's proposal that the Marital Residence be transferred to Lisa as part of his maintenance obligation. The court, however, concluded that James had sufficient funds to pay the mortgage in full within 90 days of the 2022 Supplemental Decree instead of 90 months, as James had proposed.

As to spousal maintenance, the family court found that Lisa met the statutory requirements in Kentucky Revised Statute ("KRS") 403.200 to justify a maintenance award. Although Lisa failed to submit monthly expenses or statements regarding budgetary needs, the court found that because Lisa never sought a formal temporary maintenance award, James's payment of $2,000 biweekly, along with the mortgage and car insurance payments, must have met her financial needs. The family court accepted James's proposed maintenance payment and ordered him to pay $3,000 per month to Lisa, along with the

---

[2] By the final hearing, Lisa was unrepresented, having gone through four attorneys who had all withdrawn. Only James's attorney provided proposed findings after the trial.

mortgage payment. However, the court kept maintenance in place for ten years instead of 90 months (seven and one-half years), as James had proposed.

The family court found the parties' vehicles were marital assets, and the equity in each was roughly equivalent.[3] Therefore, the court awarded James the Mercedes (and its outstanding debt) and Lisa the Odyssey. As to the retirement funds, health savings account, and Delta Skymiles, the court divided the funds evenly between James and Lisa. The court found Lisa had taken $731.45 more than James when she transferred money out of the joint CMA; therefore, the court ordered that amount to be subtracted from James's individual CMA along with the $48,500 James had deposited there. The remainder – $129,054.76 – was to be divided evenly between James and Lisa. The court ordered that James keep all life insurance policies in place and keep Lisa as the primary beneficiary until his maintenance obligation ended. Finally, the court found James's student loans to be non-marital debt belonging solely to James.

The next month, James filed a CR 59.05 motion to alter, amend, or vacate the 2022 Supplemental Decree. First, James argued the family court had awarded the Marital Residence to Lisa without awarding James an offsetting equity payment. Second, James argued the ten-year spousal support period was too long,

---

[3] Lisa's Honda Odyssey was worth $12,825 with no debt owing, and James's Mercedes had $14,001 in equity ($37,025 value - $23,023.60 loan amount).

and he should have received credit for the pre-trial years he supported Lisa. Third, James argued that he should not have to keep Lisa as the beneficiary on all his life insurance policies because the total value was $1,755,000, which greatly exceeded the maintenance obligation owed to Lisa. Fourth, James argued that his student loan debt should have been considered marital debt.

The family court granted James's motion, in part, and denied it, in part. The court ordered James to pay the mortgage on the Marital Residence in full, but permitted him 24 months from the entry of the 2022 Supplemental Decree and ordered him to keep Lisa as the primary beneficiary on only two of his six life insurance policies – totaling $500,000. The court noted that the judge who had conducted the trial had retired, so the new judge who had not heard all of the evidence was, therefore, otherwise reluctant to alter the previous judge's rulings. As such, all other requests were denied. James appeals the partial denial.[4]

## II.    STANDARD OF REVIEW

A trial court's "denial of a motion to alter, amend or vacate is subject to the abuse of discretion standard." *Ipock v. Ipock*, 403 S.W.3d 580, 583 (Ky. App. 2013) (citing *William C. Eriksen, PSC v. Ky. Farm Bureau Mut. Ins. Co.*, 336

---

[4] Lisa failed to file an Appellee Brief. Kentucky Rule of Appellate Procedure ("RAP") 31(H)(3) provides that "[i]f the appellee's brief has not been filed within the time allowed, the court may: (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case." This Court will accept James's statement of the facts and issues as correct.

S.W.3d 909, 911 (Ky. App. 2010)).  "[T]he test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  *Miller v. Eldridge*, 146 S.W.3d 909, 914 (Ky. 2004) (internal quotation marks omitted) (quoting *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)).

### III.    ANALYSIS

#### A.    Distribution of Marital Property

First, James argues the family court should have granted his CR 59.05 motion regarding distribution of the Marital Residence equity.  Specifically, he claims that the family court erred when conducting the final step in the property-division analysis:  the equitable division of marital property between the parties.  *See Travis v. Travis*, 59 S.W.3d 904, 908-09 (Ky. 2001).  James argues that such division was not equitable.  Therefore, James contends that the family court erred when it distributed 76% of the marital property to Lisa and only 24% to him.  We agree.

It is long-established precedent that "[a] trial court is to divide marital property in just proportions considering all relevant factors."  *Croft v. Croft*, 240 S.W.3d 651, 655 (Ky. App. 2007); *see also Wilder v. Wilder*, 294 S.W.3d 449, 452 (Ky. App. 2009).  Those factors include:

(a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;

(b) Value of the property set apart to each spouse;

(c) Duration of the marriage; and

(d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

KRS 403.190(1).

While the division must be equitable, that "does not necessarily mean equal proportions." *Croft*, 240 S.W.3d at 655 (citation omitted). The family court has wide discretion in dividing marital property. *Davis v. Davis*, 777 S.W.2d 230, 233 (Ky. 1989). However, as noted, that decision must be based on the factors in KRS 403.190(1). *Id.*

This Court has previously analyzed seemingly disparate divisions. In *McVicker v. McVicker*, 461 S.W.3d 404, 420 (Ky. App. 2015), the family court awarded one party 70% of a marital asset. The family court there had determined such distribution was for the benefit of the parties' child. *Id.* However, this Court found that the family court did "not appear to have considered the statutory factors listed in KRS 403.190(1) at all in reaching this conclusion." *Id.* Therefore, this Court held that the family court had abused its discretion in awarding the party

70% of the marital asset and vacated the "ruling for proper consideration of the statutory factors." *Id.*

Likewise, here, the family court does not appear to have considered the factors in KRS 403.190(1) when distributing the Marital Residence equity. While the court did acknowledge that the parties had been married for nearly 30 years, there was no indication that the marital duration supported Lisa receiving 100% of the equity in the Marital Residence. Indeed, the record indicated that James was a major contributor to the acquisition of marital property. Although Lisa had worked as a homemaker for much of the marriage (thereby also making her a contributor), by the time of the dissolution, James acted as the primary parent to their child and financially supported Lisa. As such, the record suggests the parties contributed at least equally to the acquisition of marital property. Lisa will acquire the Marital Residence, which she will own outright once James pays it off. James will also pay Lisa maintenance. As the family court acknowledged, Lisa presented no evidence that she was unable to maintain employment or contribute to her own financial needs. The family court did not detail how these facts support a finding that Lisa should get three-quarters of the marital property (and 100% of the Marital Residence equity), while James gets one-quarter (and 0% of the equity).[5]

---

[5] *Cf. Heskett v. Heskett*, 245 S.W.3d 222, 228 (Ky. App. 2008).

As noted, the family court instead seemed to rely on James's proposal to award the Marital Residence to Lisa and for James to pay the remainder of the mortgage in full. However, James did not propose to give Lisa 100% of the equity in the Marital Residence.[6] Nonetheless, the court awarded 100% of the Marital Residence equity to Lisa while all other assets were split evenly between the parties.[7] This awarded Lisa $258,763.94[8] plus half the 401k and James $79,940.34[9] plus half the 401k. In attempting to accept James's proposal, the family court failed to set forth its analysis of the requisite factors in KRS 403.190(1) when considering the Marital Residence equity. Further, because Lisa failed to file a brief, we must accept James's facts and issues as correct. *See* RAP 31(H)(3)(a). Such discrepancy, without any explanation, suggests that the distribution of the Marital Residence equity was an oversight and thereby arbitrary. While we understand the new family court judge's reluctance to alter an order of a

---

[6] Although the family court adopted much of James's proposed decree, it did not blanketly adopt the proposal. For example, James's proposed recapitulation chart gave Lisa 100% of the Marital Residence equity but gave James 100% of the Joint CMA equity. Although those values were not identical, such distribution would have created similar awards for James and Lisa overall.

[7] The only assets with different values were the vehicles, in which Lisa was awarded $12,825 in equity and James was awarded $14,001.40.

[8] $180,000 in equity from the Marital Residence + $12,825 from the Honda Odyssey + $64,527.38 from half of the joint CMA + $526.02 from half of the health savings account + $885.54 from half of the Delta Skymiles.

[9] $14,001.40 from the Mercedes + $64,527.38 from half of the joint CMA + $526.02 from half of the health savings account + $885.54 from half of the Delta Skymiles.

previous judge, we find this matter requires consideration of the factors in KRS 403.190(1).  As such, we remand that issue to the family court.

As the reconsideration of the Marital Residence equity distribution may affect other findings – the timeline for James to pay the mortgage in full, the duration of maintenance, and which life insurance policies shall maintain Lisa as a beneficiary – we need not consider those issues at this time.

**B.      Student Loan Debt**

James acknowledges that Kentucky courts have held that education loans are generally considered non-marital debt, and "must be borne by the party who will reap the benefit from it."  *Van Bussum v. Van Bussum*, 728 S.W.2d 538, 539 (Ky. App. 1987).  However, James attempts to compare his loans to those discussed in an unpublished, non-binding case – *Berwanger v. Berwanger*, No. 2022-CA-0419-MR, 2023 WL 2817494, *1 (Ky. App. Apr. 7, 2023) – in which the court held the loans could be allocated to both parties if the loan was for marital purposes.  James asserts that his student loans were for "marital purposes" because they allowed him to get an advanced degree and increase his income, which benefited Lisa.  However, *Berwanger* is easily distinguishable from the facts here.

In *Berwanger*, the appellee had approximately $40,000 in student loan debt; however, she testified that one-fourth of those loans was used for living expenses during the marriage, not for educational expenses.  *Berwanger*, 2023 WL

-12-

2817494, at *3. Because $10,000 of the student loans had been used to pay for marital expenses, the trial court ordered the parties to split that portion of the student loans ($5,000 each). *Id.* The appellee was solely responsible for the loan amount used for educational purposes (the remaining $30,000). *Id.* There, this Court explained that "[t]he party claiming that a debt is marital in nature has the burden of proof." *Id.* at *6 (citing *Maclean v. Middleton*, 419 S.W.3d 755, 773 (Ky. App. 2014)). When making such decisions, the family court "should consider several factors, such as receipt of benefits, extent of participation, whether the debt was incurred to purchase marital assets, whether the debt was necessary to provide for the family, and the parties' economic circumstances." *Id.* (citing *Maclean*, 419 S.W.3d at 773).

Here, James acquired student loans to pay solely for his educational expenses. James provided no argument nor any evidence that any portion of his loans was used for marital expenses. Instead, James contends that solely by virtue of getting the degree, he contributed to marital expenses. However, that is not what this court held in *Berwanger*. As such, the family court did not abuse its discretion when it refused to alter its previous finding that James's student loans were non-marital debt belonging only to him.

-13-

## IV. CONCLUSION

As the family court did not fully support or explain its conclusion regarding the distribution of the Marital Residence equity, we find it abused its discretion when it denied James's CR 59.05 motion, in part. Therefore, we VACATE the 2022 Supplemental Decree, in part, and REMAND for the family court to consider the Marital Residence equity distribution – in line with KRS 403.190(1) factors. That consideration may require a corresponding reconsideration of the timeline for James to pay off the mortgage, duration of maintenance, and assignment of Lisa as beneficiary of James's life insurance policies to ensure any changes in the division of marital assets creates an equitable property distribution.

However, we AFFIRM the 2022 Supplemental Decree as it pertains to the family court's finding that James's student loans were non-marital debt belonging solely to him.

ALL CONCUR.

BRIEF FOR APPELLANT:                NO BRIEF FOR APPELLEE.

Carrie R. Waide
Matthew J. Worth
Covington, Kentucky