DIXON, JUDGE:
Appellant/Cross-Appellee, Matthew Brian Duffy, appeals from Findings of Fact, Conclusions of Law, and Decree of Dissolution of Marriage of the Taylor Circuit Court, wherein the trial court determined that his unvested restricted stock units were marital property and subject to division by the court. Appellee/Cross-Appellant, Faustina Lanet Duffy Landis, has filed a cross-appeal challenging the trial court's reduction of its initial finding regarding Matthew's potential gross income. For the reasons stated herein, we affirm the trial court.
The parties herein were married on December 31, 2001, in Natchitoches Parrish, Louisiana. One child was born during the marriage, a son whose date of birth is October 13, 2013. The parties relocated to Campbellsville, Kentucky in 2010, when Matthew accepted employment as a supervisor with Amazon. In 2014, Matthew was transferred to San Jose, California to work in a similar position with Amazon. Faustina and the parties' son remained in Campbellsville. On October 15, 2015, Faustina filed a petition for dissolution of marriage in the Taylor Circuit Court, which included a request for custody of the minor child.
On November 19, 2015, the trial court entered Findings of Fact and Conclusions of Law awarding the parties joint custody, with Faustina being designated as the residential custodian. The trial court found that Matthew earned approximately $144,757.15 in 2014. Further, Matthew was enrolled in Master's Degree classes at Santa Clara University under a 9/11 GI Bill and was receiving full tuition as well as a housing allowance of $2,506.40 per month, despite not owning a home or paying rent in California. As a result, for the purposes of calculating temporary child support and maintenance, the trial court calculated Matthew's gross monthly income to be $17,089.73.[1] Matthew was ordered to pay temporary child support in the amount of $1,056 per month and temporary maintenance in the amount of $2,500 per month.
Subsequently, on December 5, 2015, some three weeks after the trial court's temporary order, Matthew discontinued his classes at Santa Clara University. Upon his withdrawal from college, the monthly housing allowance was terminated. Thereafter, on March 23, 2016, Matthew tendered a resignation letter to Amazon, which read,
Saket, I regret to inform you that I will end my employment with Amazon.com as of 4 April, 2016. I appreciate all that I have learned with Amazon fulfillment, but have to make adjustments to my work schedule due to some family related issues and cannot meet *824 the requirements demanded of an Amazon area manager.
I do hope that, after I have resolved my family issues, I will be considered to work with Amazon again.
Thank you.
Matt Duffy
At the time of Matthew's resignation, he had acquired 224 Restricted Stock Units (RSU) that had an unvested potential (pre-tax) value of $143,886.40. Those shares were scheduled to vest on May 15, 2016. However, upon his resignation, Matthew forfeited all rights in the RSUs. Matthew thereafter took a job with Sun Basket Food Distributing at an annual base salary of $70,000. He also received 5000 shares of company stock that were valueless at that time.
A final hearing on the matter was held on May 6, 2016, during which both parties testified. The trial court entered its Findings of Fact, Conclusions of Law and Decree of Dissolution on May 17, 2016. In the trial court's extensive findings of fact, it determined that Faustina had the reasonable ability to earn $2,000 per month in addition to her monthly Veteran's Administration disability income of $1,227.09, for a total monthly imputed income of $3,227.09. With respect to Matthew's income, the trial court found:
25. It is impossible for the Court to know the exact motivation of the Respondent in changing jobs. Certainly, it is suspicious the Respondent chose to change employment and discontinue his master's education only after the Court's temporary child support and maintenance order was entered. Child support and maintenance calculation are based on the Respondent's ability to earn money, and not what he is currently earning. The Court finds it would be inequitable to calculate Respondent's monthly income on his current earnings when he voluntarily chose to accept a $130,000 yearly pay cut. Accordingly, for child support and maintenance calculation, the Court imputes the Respondent gross monthly income of $10,000 per month.
Further, regarding the classification and valuation of marital property, the trial court made the following relevant Findings of Fact:
65. At the time of Respondent's resignation from Amazon.com, he had 224 remaining unvested shares. In calculating the same yield which was generated on the other 95 shares which became vested in November, 2015, the Court finds these unvested shares had an after tax value of $82,665.00
66. The Respondent voluntarily resigned his position with Amazon to accept new employment which was approximately one-third of the amount he was earning and relinquished $82,665.00 from these unvested shares which had been accumulated. The Court finds the actions of the Respondent constitute a dissipation of marital assets. Accordingly, in the valuation of the marital property the Court assigns a value to the Respondent of these unvested benefits at Amazon in the amount of $82,665.00. The Court finds the actions of the Respondent dissipated marital assets and basically gave away this money without any input or agreement by the Petitioner.
In its Conclusions of Law, the trial court similarly noted,
22. One issue to be determined in this action involves the status of certain "Restricted Stock Units (RSU) offered by the Respondent's former employer, and whether or not they constitute a marital asset. From information provided to this Court, the Respondent was entitled, twice a year, to have stock issued in his name, which he could then hold or liquidate as he saw fit. The only requirement *825 is that the Respondent be employed by Amazon on the declared date that the stock would be issued. In other words, the stock is issued as a sort of loyalty reward. Since Amazon has done well, the RSU distribution of the 224 unvested stock options to which the Respondent would have been entitled would have had [an after tax] value of $82,665.00.
23. Unfortunately, on or about March 26, 2016, the Respondent elected to discontinue his employment with Amazon and forfeited his ability to receive the RSUs for the last distribution. By way of reference, the Respondent was aware of the RSU policy and procedures at the time he discontinued his employment, had exercised his rights under the RSU in the past, and the date of the last RSU was during the time of the parties' marriage, but after their separation and after the filing of this petition.
24. Counsel for Petitioner argues that the RSUs are a marital asset; Respondent naturally argues that they are not. The default position under Kentucky law is that all property acquired during the marriage is presumed to be marital which can only be rebutted by clear and convincing evidence, KRS 403.190(3). Further, the question was addressed in the case of Burton v. Burton , [2011 WL 557469] 2011 Ky. App. Unpub. LEXIS 113, finding that the retained RSUs can be considered as marital property. While the Court is not relying on Burton as authority, the Court is in agreement with the logic used by [Adair Circuit Court] Judge Weddle and the conclusion reached, so the Court finds the RSUs in the case at bar were marital assets.
25. The Respondent in this case held the triggering event to receive the RSUs in his control-his decision to remain employed at Amazon. In one sense, his decision not to remain employed at Amazon constitutes a dissipation of marital assets. While he did not hide the monies away, or spend them on a third party or a solo world cruise, his choice removed a significant asset from the marital estate. Instead of spending the monies for a non-martial purpose, his choice not to receive the funds decreased the value of the marital estate.
26. Asset dissipation can be taken into consideration in determining the content of the marital estate, and considered in the distribution of the estate, Brosick v. Brosick, 974 S.W.2d 498 (Ky. App. 1998). In light of the factors mentioned above, the Court finds that the RSUs shall be considered a marital asset and shall be treated accordingly in the computations of this Court.
The trial court ordered Matthew to pay $805.00 per month in child support, as well as the sum of $705.00 per month in maintenance for a period of three years, or until such time as either party were to die or Faustina were to remarry or cohabitate with another individual. Relevant to this appeal, in its division of marital property, the trial court assigned to Matthew as a marital asset the $82,665.00 after-tax value of the unvested RSUs he forfeited.
Matthew thereafter filed a motion to alter, amend or vacate the trial court's Findings of Fact, Conclusions of Law and Decree of Dissolution, raising various claims of error. Following a hearing on June 16, 2016, the trial court entered amended Findings of Fact and Order, denying the majority of Matthew's claims. However, the trial court did agree that it erred in calculating Matthew's income for the purposes of establishing child support and maintenance:
4. The Respondent next argues the Court erred in the calculation of child support and maintenance. The Respondent argues that upon his termination at Amazon his base salary was $83,614.00. The Court notes the Respondent's income *826 which exceeded $144,000.00 in 2014 and $200,000.00 in 2015 included the income from the restricted stock units which the Court determined to be a marital asset and divisible. The Respondent also argues there is no guarantee as to the value of Amazon stock in the future and contends that the Court should have based the Respondent's child support and maintenance on gross income of $83,614.00 per year. ...
The Court finds the argument of the Respondent in this regard to be persuasive. Upon further reflection, the Court believes the previous order entered was unfair by including the restricted stock units as a marital asset and also imputing that as income to the Respondent. Accordingly, the Court will base the Respondent's child support and maintenance calculation on gross income of $6,968.00 per month, the Respondent's base salary at Amazon at the time he left that employment. It should be noted the Respondent at his new place of employment currently has a gross income of $5,833.00 per month
As a result, the trial court recalculated Matthew's monthly maintenance obligation at $450.00 for a period of three years and his monthly child support obligation at $664.00. Both parties thereafter appealed to this Court as a matter of right.
We review a trial court's decisions regarding child support, maintenance, and the division of assets pursuant to a divorce decree for an abuse of discretion. See Young v. Young , 314 S.W.3d 306 (Ky. App. 2010) ; McGregor v. McGregor , 334 S.W.3d 113 (Ky. App. 2011). To amount to an abuse of discretion, the trial court's decision must be "arbitrary, unreasonable, unfair or unsupported by sound legal principles." Commonwealth v. English , 993 S.W.2d 941, 945 (Ky. 1999). Furthermore, the trial court's findings of fact will not be disturbed unless clearly erroneous. Black Motor Co. v. Greene , 385 S.W.2d 954 (Ky. 1965) ; CR 52.01. "Findings of fact are not clearly erroneous if supported by substantial evidence." Janakakis-Kostun v. Janakakis , 6 S.W.3d 843, 852 (Ky. App. 1999). Substantial evidence is that evidence, when taken alone or in the light of all the evidence, has sufficient probative value to induce conviction in the minds of reasonable people. Id. (citing Kentucky State Racing Commission v. Fuller , 481 S.W.2d 298, 308 (Ky. 1972) ). However, the trial court's conclusions of law are reviewed de novo. Stipp v. St. Charles , 291 S.W.3d 720, 723 (Ky. App. 2009).
Classifying property as marital or non-marital "involves an application of the statutory framework for equitable distribution of property upon divorce and therefore constitutes a question of law...." Holman v. Holman , 84 S.W.3d 903, 905 (Ky. 2002). Accordingly, we review trial court rulings regarding the classification of marital property de novo. Young , 314 S.W.3d at 308. Once classified, however, the division of marital property is within the sound discretion of the trial court. McGregor , 334 S.W.3d at 119. "We review a trial court's determinations of value and division of marital assets for abuse of discretion." Young , 314 S.W.3d at 308 (citing Armstrong v. Armstrong , 34 S.W.3d 83, 87 (Ky. App. 2000) ).
On appeal, Matthew first argues that the trial court erred in ruling that his non-vested RSUs were divisible as martial property. Matthew contends that the non-vested RSUs were simply a bookkeeping entry that represented future shares that would be awarded to him once the RSUs vested. As such, Matthew asserts that until the date of vestment, the RSUs had no value that could be assigned to them. Further, Matthew argues that although the RSUs were awarded during the marriage, even had he not terminated his employment *827 with Amazon they would not have vested at the time of the final hearing on May 6, 2016. Appellant cites to the unpublished decision in Gallagher v. Gallagher , 2012-CA-000671-MR, 2013 WL 5886028 (Nov. 1, 2013),[2] wherein a panel of this Court refused to conclude that the "speculative and unvested RSUs at issue constitutes an asset to be divided by the trial court."
This Court has addressed this issue in three recent decisions. In the unpublished decision in Burton v. Burton , 2009-CA-001431-MR, 2011 WL 557469 (Feb. 18, 2011),[3] the husband similarly worked at Amazon where he was awarded RSUs twice a year. This Court affirmed the trial court's finding that the proceeds from the sale of any vested RSUs should be classified as income, while the unvested RSUs should be classified as a marital asset for the purposes of marital division.
In Gallagher , we reached an opposite conclusion. Therein, the husband received RSUs during his employment with UPS. The trial court ruled that the value of the unvested RSUs were divisible as marital property. On appeal, however, this Court disagreed, noting:
The Prospectus for the UPS Incentive Compensation Plan defined an RSU as
a bookkeeping unit. No shares are transferred to you or set aside for you at the time the RSU award is granted. If and when your RSU award vests, a number of shares of UPS class A common stock equal to the number of vested RSUs ... will be transferred to your account....
(Emphasis added). Considering this definition of the RSU in this case, we are unable to conclude that the speculative and unvested RSUs at issue constituted an asset to be divided by the trial court. While it is certainly true that Andrew's work at UPS during the marriage may one day count toward the eventual award of RSUs, Andrew possessed no actual shares of stock the value of which could be definitively determined and divided....
This being the case, we find that the restricted stock in question does not meet the statutory definition of a marital asset and that the trial court erred in finding otherwise.
(Slip op. p. 12).
Most recently, in Dotson v. Dotson , 523 S.W.3d 441 (Ky. App. 2017), the trial court ruled that the wife's unvested Restricted Performance Units (RPUs) she was awarded through her employment with UPS were marital property. The wife argued on appeal that she had not earned, and may never earn the stock represented by the RPU. Disagreeing, this Court held,
As a primary matter, we recognize that in an unpublished opinion, Gallagher v. Gallagher , No. 2012-CA-000671-MR, 2013 WL 5886028 (Ky. App. Nov. 1, 2013), a panel of this Court reached the opposite conclusion. Having closely reviewed the Gallagher opinion, we cannot agree with its characterization of the RPU (referred to as an RSU in Gallagher ) as entirely speculative.
At the time it is awarded, the MIP[4] Award is paid part in cash and part in RPUs. Unlike in Gallagher , it is clear from the Plan documents before us that the RPU does have a quantifiable value when it is "paid" to the employee. Until full vesting occurs, the RPUs are kept in an account for the employee. While the RPUs are speculative in the sense that full vesting may never occur, for example, if the employee voluntarily leaves *828 UPS prior to retirement, they do represent a form of bonus earned by the employee. And, the employee has a right to enforce the Plan if it is not administered according to the company's agreement. Therefore, we must conclude that an unvested RPU is more than merely a speculation. It represents an award to the employee that may be enforced by the employee in accordance with the Plan terms. See Poe v. Poe , 711 S.W.2d 849, 855 (Ky. App. 1986).
We believe that to the extent the RPU was "paid" during the marriage as a result of work performed by one spouse during the marriage, it should be treated as marital property. "The value of appellant's vested right of future participation in an employment benefit plan was a valuable deferred compensation right even though it might never be fully exercised. It follows, therefore, that the court did not err by finding that the value of appellant's accrued ownership rights in the nonvested stock constituted marital property." McGinnis [v. McGinnis ], 920 S.W.2d [68] at 71 [ (Ky. App. 1995) ].
Dotson , 523 S.W.3d at 445 (footnote omitted).
In the case at bar, Matthew's RSUs were transferred from Amazon to him and set aside in an account at Morgan & Stanley in Matthew's name. The account statements list the total number of RSUs Matthew received during his employment at Amazon, and delineate how many had vested and been sold, as well as how many unvested RSUs remained in the account. The statement contained in the record, dated November 15, 2015, shows that Matthew had 224 unvested RSUs with an unvested potential value of $143,866.40.[5] Further, the statement indicates that the RSUs would have vested on May 15, 2016. In reviewing the case law on this issue, culminating with the published opinion in Dotson , we are of the opinion that the trial court correctly held that the RSUs were marital property.
Nevertheless, the significant distinction between this case and those previously cited is the fact that Matthew terminated his employment and forfeited those RSUs during the pendency of the parties' divorce. Thus, they were no longer available for distribution in assigning marital assets. The question necessarily becomes whether Matthew's action constituted a dissipation of a marital asset. The trial court concluded that it did. We agree.
"[A] party is free to dispose of his marital assets as he sees fit so long as such disposition is not fraudulent or intended to impair the other spouse's interest such that it may properly be classified as a dissipation of the marital estate." Ensor v. Ensor , 431 S.W.3d 462, 472 (Ky. App. 2013). However, in determining a just distribution of the marital estate, it is proper for the trial court to consider whether one of the parties dissipated or wasted marital assets if the property is expended "(1) during a period when there is a separation or dissolution impending, and (2) where there is a clear showing of intent to deprive one's spouse of his or her proportionate share of the marital property." Robinette v. Robinette , 736 S.W.2d 351, 354 (Ky. App. 1987) ; See also Brosick v. Brosick , 974 S.W.2d 498, 500 (Ky. App. 1998). Dissipation must be demonstrated by a preponderance of the evidence, and the family court's findings of fact are upheld if supported by substantial evidence. Kleet v. Kleet , 264 S.W.3d 610, 617 (Ky. App. 2007). The family court acts as fact-finder and possesses the sole authority to *829 assess the credibility of witnesses. If dissipation is found to have occurred, "the court will deem the wrongfully dissipated assets to have been received by the offending party prior to the distribution." Brosick , 974 S.W.2d at 500. The equitable relief fashioned by the court must bear some relation to the evidence presented.
As the trial court herein noted, this is not a situation where Matthew hid the monies away or spent them on a third party. Nevertheless, he intentionally removed a significant asset from the marital estate during the divorce proceedings without any knowledge by Faustina. Matthew complains that the trial court essentially punished him for resigning from Amazon to accept a new job. While we might agree that under other circumstances Matthew's decision to accept new employment would not seem quite so suspect, as the trial court observed, Matthew's resignation letter certainly leaves open the possibility of him returning to Amazon, a fact that Matthew did not deny during the hearing. Furthermore, given the fact that the RSUs were due to vest in May 2016, we are compelled to agree with the trial court that Matthew's decision to resign two months before the vesting date was illogical at best and certainly supports the trial court's conclusion that it was for the sole purpose of depriving Faustina of her proportionate share of the marital assets.
In Pitman v. Pitman , 721 N.E.2d 260 (Ind. App. 1999), the Husband transferred his shares of family stock to another family member for $1 per share, just one month before the wife filed a petition for divorce. At the time of the transfer, each of the shares of stock were worth approximately $80,000. In finding that the transfer constituted a dissipation of marital assets, the Indiana Court of Appeals held:
Waste and misuse are the hallmarks of dissipation. Dissipation generally involves the use or diminution of the marital estate for a purpose unrelated to the marriage and does not include the use of marital property to meet routine financial obligations. However, the party claiming dissipation must show something more substantial than that the transaction was disputed at the time or that the transaction appears in retrospect to have been unwise. Factors to consider in analyzing whether dissipation of marital assets has occurred include:
"1) whether the expenditure benefited the marital enterprise or was made for a purpose entirely unrelated to the marriage;
2) whether the transaction was remote in time and effect or occurred just prior to the filing of a divorce petition;
3) whether the expenditure was excessive or de minimis; and
4) whether the dissipating party had the intent to hide, deplete or divert the marital asset."
....
Applying the elements of dissipation to the instant case, we hold that there is sufficient evidence in the record to support the trial court's conclusion that Husband had sold his shares of stock to avoid their inclusion in the marital estate, thereby dissipating marital assets.
Id. at 264-65. (citations omitted) (emphasis added).
As previously noted, the trial court had the sole authority to assess the credibility of the witnesses. We are of the opinion that the trial court's finding that Matthew dissipated marital assets by forfeiting his right to RSUs just two months prior to their vesting date is supported by substantial evidence. Indeed, we too believe that Matthew's act of forfeiting the RSUs was an "intentional waste or a selfish financial impropriety,"
*830 Yao Gong v. Xuanwei Huang , 129 Conn.App. 141, 21 A.3d 474 (2011) (citation omitted), intended to deprive Faustina her proportionate share of the marital estate.
CROSS-APPEAL
In her cross-appeal, Faustina argues that the trial court erred in reducing Matthew's "potential income" to $83,614.00, his base salary while employed at Amazon. Faustina contends that although Penner v. Penner , 411 S.W.3d 775 (Ky. App. 2013), held that it was error to classify an RSU as a marital asset while also considering it gross income for child support purposes, such rule does not apply to a determination of potential income. Faustina opines that had Matthew remained with Amazon, he would have continued to receive RSUs and other bonuses, which would have been factored into his income.
"Trial courts establishing child support ... have the discretion and the duty to scrutinize taxable income and to deviate from it whenever it seems to have been manipulated for the sake of avoiding or minimizing a child support obligation...." Snow v. Snow , 24 S.W.3d 668, 672 (Ky. App. 2000). For purposes of determining child support, a court may impute income to a party it finds to be voluntarily unemployed or underemployed. KRS 403.212(2)(d) provides that
[i]f a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income.... Potential income shall be determined based upon employment potential and probable earnings level based on the obligor's or obligee's recent work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community. A court may find a parent to be voluntarily unemployed or underemployed without finding that the parent intended to avoid or reduce the child support obligation.
In its initial Findings of Fact and Conclusions of Law, the trial court found that prior to leaving Amazon, Matthew had earned $200,000.00 in 2015. The trial court concluded that it would be inequitable to calculate Matthew's monthly income based upon the salary at his new employment because he voluntarily chose to take a $130,000 yearly pay cut. Accordingly, the trial court imputed a gross yearly income of $120,000. However, in his motion to alter, amend or vacate, Matthew pointed out that his base salary at Amazon was only $83,614.00, and that his income in 2015 was an anomaly based upon moving bonuses, a one-time signing bonus, and the value of the vested RSUs that the trial court had determined to be a divisible marital asset.
In its amended Findings of Fact and Conclusions of Law, the trial court properly realized that the RSUs could not be included as a martial asset and also attributed to Matthew as income. Indeed, in the Penner decision, a panel of this Court held that such "double-dipping" was prohibited. Contrary to Faustina's argument, we perceive no reason why the Penner prohibition would apply to the calculation of gross income but not potential income.
The trial court concluded that Matthew was voluntarily underemployed and, as a result, imputed to him a potential gross monthly income of $6,968.00, which represented the amount he earned at Amazon, despite the fact that his actual gross monthly income was $5,833.00. We believe this was the correct finding. KRS 403.212(d) allows a trial court to demine "potential income" in calculating child support, but contrary to Faustina's position, that determination simply cannot include all unknown speculative sources of future *831 income. Accordingly, the trial court did not err in reducing the amount of Matthew's potential income.
For the reasons set forth herein, the Taylor Circuit Court's Findings of Fact, Conclusions of Law and Decree of Dissolution is affirmed.
ALL CONCUR.

The trial court factored into its monthly income estimate the housing allowance but not the tuition award.

2013 WL 5886028.

2011 WL 557469.

Management Incentive Program.

Unvested potential value is the number of shares multiplied by the current price of Amazon stock. On the November statement, the stock was valued at $642.3500 per share.