RENDERED: MAY 5, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0706-MR

MICHAEL KELLY
APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE DERWIN L. WEBB, JUDGE
ACTION NO. 15-CI-500163

NORA KELLY
APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, EASTON, AND ECKERLE, JUDGES.

COMBS, JUDGE: This appeal arises from a dissolution of marriage. Appellant,

Michael Kelly (Mike), appeals from a final judgment of the Jefferson Circuit Court

determining the division of the parties' marital estate. Finding no error after our

review, we affirm.

The parties were married on October 29, 1998. On January 20, 2015,

the Appellee, Nora Kelly (Nora), filed a petition for dissolution of marriage in

Jefferson Circuit Court. The case was tried on October 16, 2019. Nora, Mike, and

Mike's mother, Billie Kelly, testified. The trial court's order entered on December 6, 2019, provides in part as follows:

> [Nora] previously filed for divorce in action number 13-CI-502810 in this Court. That matter was pending from January 2013 until August 2014. That action and the proceedings therein have been consolidated with this action.
>
> . . .
>
> . . . [T]his matter has been unnecessarily contentious and complicated. The Court heard testimony that [Mike] started a company incorporated as Kellco Company in 1993, prior to [their] marriage. When the parties met, both . . . worked at Naval Ordinance . . . [and] each left their jobs . . . at or shortly after . . . their marriage. From 1998 to present, neither party has worked in any capacity other than with . . . Kellco . . . .

The evidence was conflicting. Mike testified that Kellco was thriving and that it was worth least $800,000.00 at the time of marriage. However, Nora testified that Kellco was not profitable at that time. She produced Kellco's 1999 federal tax return showing a loss of approximately $1,000.00. The trial court found that:

> [Nora] testified that the parties worked together during the early years of their marriage to develop and grow Kellco into a successful machine business. [Nora] testified that she worked in the shop itself, by painting, wallpapering, landscaping, cleaning and performing other maintenance work. [Nora] also handled the payroll for the company, managed accounts, and kept the books . . . . [Mike] testified that [Nora] helped to clean but was not involved in the daily operations of the business. He also

stated his work for the company involved making parts with the machines.

The trial court found that in June 1998, the parties purchased their marital residence at 1409 Hobart Avenue in Louisville, Kentucky (the Hobart residence), for $98,000.00. Nora testified that Mike bought the house as a wedding gift for her. Mike testified that he did **not** make a gift of the house to Nora. On this contested point, the trial court found as follows:

> [I]n 2000, Kellco purchased commercial real estate . . . at 1600, 1601, and 1506 Nonny Lynn Drive from [Mike's] parents and deeded the property in Kellco's name. The sale price was $103,000.00. While [Nora] testified that the money used to purchase that land came from marital funds, [Mike] argues it came from his non-marital funds. However, [Mike] failed to produce any evidence to trace the purchase to non-marital funds. The Court further heard testimony that the parties used their earnings from the business to purchase many items of heavy machinery over the years and used those machines to fill orders for parts from Kellco.

In 2002, the parties purchased their first rental property together at 1504 Hobart Drive (the Hobart rental), which was deeded in their joint names. Nora testified that the Hobart rental was purchased with marital funds. Mike testified that it was purchased with non-marital funds. The trial court found that Mike "failed to produce any evidence to trace the purchase money from his non-marital funds."

Additionally, the trial court found that:

[I]n 2003, Kellco was sold for . . . $500,000.00. However, the parties retained the [real] property on Nonny Lynn Drive, selling only the business name and some machinery. The real estate was deeded from Kellco into [Mike's] individual name. While the deed states that the transfer was "for nominal consideration," [Mike] acknowledged that no money changed hands during this transaction. The proceeds of that sale were used to open investment accounts with Edward Jones in their individual names as well as in their joint names. The parties also used the funds to begin developing the Nonny Lynn Drive property with the intention of managing rental property there. The parties paved the property, ran water and electric lines, and erected three (3) large warehouse style buildings which were completed around 2005. . . . The Court heard testimony that [Mike] would work odd jobs with the equipment purchased and each party participated in trying to rent and manage the other units on the property.

Then, in 2010, the parties purchased a new residence located at 13701 Rutland Road in Goshen, Kentucky, deeded jointly to the parties. [Nora] testified that the funds to purchase the residence may have come from the parties['] Edward Jones accounts, rental income, or earnings related to the machines business being conducted at Nonny Lynn Drive. [Mike] claimed the purchase money came from Kellco[,] . . . that "everything came from Kellco." However, [Mike] failed to produce any evidence to trac[e] the purchase money to his non-marital funds.

The trial court found that in 2012, the parties sold their Hobart residence for $149,000.00, leaving them with: the Rutland Road residence, the Hobart rental property, the commercial property on Nonny Lynn Drive, and their Edward Jones accounts. The trial court found as follows:

-4-

[Nora] introduced certified records from Edward Jones to demonstrate that [Mike] transferred all of the parties' investment assets. Approximately $379,607.56 from the parties' joint names into an Edward Jones account in his sole name. As of August 30, 2013, the parties['] Edward Jones investment accounts were valued at $435,467.57. Then in September of 2013, [Mike] opened a new Edward Jones account jointly with his mother, Billie Kelly, and transferred all the parties' assets, totaling $401,397.51 into that new account. Then in 2017, [Mike] cashed out all the accounts and received a check in the amount of $327,061.36. [Nora] testified that she did not know of nor did she agree to these transfers. [Mike] further acknowledged he emptied the accounts without [Nora's] knowledge. [Mike] testified he did this to pay bills and acknowledged that he had not given any of those funds to [Nora].

In January of 2014, the parties executed a quitclaim deed transferring their respective interests in the Nonny Lynn Drive property to [Mike's] mother. At the time this was done, the parties were subject to a Status Quo Order filed in the parties['] first divorce action prohibiting the parties from disposing of any property without an Order of the Court. [Nora] testified that she was pressured into signing the quitclaim deed, and that [Mike] repeatedly asked her to transfer the property to his mother for tax reasons while assuring her that they were not giving up their interest in the property. [Nora] further stated she believed the parties were trying to reconcile and felt that she had to sign the deed. [Nora] was not given an opportunity to show the deed to her attorney in the pending divorce action. She had no intention of giving up her interest in the property, and she did not receive any money from the transfer of the property.

In contrast, [Mike] testified it was [Nora's] idea to sell the property to [Mike]'s mother. At the time there was no mortgage on the property and the parties were

only paying property taxes on the property, and one of the units was rented and producing income at the time. [Mike] testified that his mother gave him $250,000.00 in cash which he allegedly then gave to [Nora]. He also stated he received another $250,000.00 in cash from his mother later and that he had spent it all. The Court also heard testimony from Billie Kelly stating that she gave [Mike] $250,000.00 in cash "for Nora" but when deposed Billie Kelly stated she gave the Respondent $250,000.00 in cash total and denied ever giving [Nora] any money. She [Billie Kelly] further stated at the time of the purchase she believed the property was worth at least $500,000.00 but that she only paid $250,000.00.

The trial court further found that **after** the sale, Mike had hired an engineer to survey the Nonny Lynn property and paid him over $9,000 with funds from the parties' marital liquidated Edward Jones accounts. In 2017, Billie sold the Nonny Lynn property for $867,500.00. Billie received $274,000.00 and held a mortgage for the balance.

The trial court found that parties presently own the Rutland Road realty and the Hobart rental property. Neither had a mortgage or any encumbrance. The parties introduced their respective appraisals for Rutland Road: Nora's at $324,000.00 and Mike's at $400,000.00. The Hobart rental property was appraised at $124,000.00.

The trial court discussed the applicable law: that KRS[1] 403.190 controls the disposition of property and that the basic rule is that all property

---

[1] Kentucky Revised Statutes.

acquired during the marriage is presumed to be marital unless subject to an exception in KRS 403.190(2). Once classified as marital or non-marital, the marital property is to be divided equitably by the court. The trial court further explained that dissipation "requires that a party used marital assets for a non-marital purpose." *Brosick v. Brosick*, 974 S.W.2d 498, 502 (Ky. App. 1998). The court noted that "[t]he court may find dissipation when marital property is expended (1) during a period when there is a separation or dissolution impending; and (2) where there is a clear showing of intent to deprive one's spouse of her proportionate share of the marital property." *Id.* at 500.

The trial court found that the Rutland Road, Hobart rental, and Nonny Lynn Drive properties were all acquired during the course of the marriage and that Nora claimed they were marital. The trial court found that Mike had failed to meet his burden of proof to refute Nora's claims, characterizing Mike's "testimony to be less than credible."

The trial court determined the proceeds from the sale of Kellco and any property purchased with those proceeds to be marital in nature. The court explained that Mike failed to introduce any evidence to refute that Kellco's growth was due to the parties' joint efforts and failed to introduce any expert testimony regarding Kellco's value prior to marriage, observing that the 1999 tax returns (introduced by Nora) indicated that it was operating at a loss.

The trial court valued Rutland Road at $362,000.00 -- splitting the difference between the parties' two appraisals -- and valued the Hobart rental at $124,000.00. The court concluded that both properties were marital, that they were acquired during the marriage, and that no evidence was presented to support a non-marital component in either property. The court divided the properties equitably between the parties with each receiving one-half of the value: $181,000.00 for Rutland Road and $62,000.00 for the Hobart rental property.

The trial court further found that:

the [Nonny Lynn] property was purchased with funds obtained as the result of the parties' ownership of Kellco. The property was then later improved with the proceeds of the sale of Kellco[,] before being sold in 2017 for $867,500.00 according to the property records introduced by [Nora] and then verified by [Mike's] mother. Therefore, this property will be valued at the $867,500.00 and is subject to equitable distribution, with the proceeds being equitably divided between the parties, with each party receiving one-half the value, or $433,750.00. However, [Mike] testified that he has already received $500,000.00 which shall be considered an advance on his portion of the marital estate.

The trial court found that Mike "created a significant disparity in the distribution of the assets by selling the marital property in violation of a Court Order" and by closing out the parties' Edward Jones accounts:

Had he not done so, each party would be entitled to $840,280 in marital assets. Those assets being one-half of Rutland at $181,000.00; one-half of Hobart at $62,000.00; one-half of Nonny Lynn at $433,750.00; and

-8-

one-half of the Edward Jones accounts at $163,530.00; totaling each parties' [*sic*] one-half interest in the marital assets of $840,280.00. However, [Mike] has already received $824,061.00 in marital assets where [Nora] has received $0.00. Therefore, [Nora] is entitled to her one-half of the marital assets of $840,280.00 and [Michael] is entitled to $16,219.00, the remaining balance of his marital portion minus what he has already received. In other words, [Nora] is entitled to $824,061, once [Mike] is credited for his remaining marital portion.

The trial court awarded Nora the Rutland residence and the Hobart rental in their entirety, thus satisfying "$486,000.00 of [Nora's] marital claim. Additionally, [Nora] shall be entitled to receive an additional $338,061.00 and is therefore awarded a common law judgment against [Mike] in that amount, plus interest at the rate of 12% per annum."

On December 16, 2019, Mike filed a motion to alter, amend, or vacate pursuant to CR[2] 59, which the trial court denied by order entered on January 27, 2021. With respect to Mike's argument that the Nonny Lynn property -- or its equivalent in funds -- was not part of the marital estate, the trial court explained that "there was significant bad faith" on the part of Mike and his mother towards Nora regarding the "transfer and 'sale' of this property." It found that the property "was transferred without any benefit being received by [Nora]. . . . Again, this

---

[2] Kentucky Rules of Civil Procedure.

-9-

court believes that Michael Kelly and Billie Kelly acted in concert and in bad faith to exclude Nora Kelly from their business dealings together . . . ."

Mike now appeals. He contends that the trial court's findings of fact and conclusions of law were erroneous as a matter of law, that they were not supported by the evidence, and that the trial court's decision was an abuse of discretion.

At the outset of our analysis, we note the pertinent reasoning of *Sexton v. Sexton*, 125 S.W.3d 258, 264-66 (Ky. 2004).

> The disposition of parties' property in a dissolution-of-marriage action is governed by KRS 403.190, and neither record title nor the form in which it is held, *e.g.*, partnership, corporation, or sole proprietorship, is controlling or determinative. Under KRS 403.190, a trial court utilizes a three-step process to divide the parties' property: (1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties. An item of property will often consist of both nonmarital and marital components, and when this occurs, a trial court must determine the parties' separate nonmarital and marital shares or interests in the property **on the basis of the evidence before the court**. . . . Kentucky courts have typically applied the "source of funds" rule. . . . [which] simply means that the character of the property, *i.e.*, whether it is marital, nonmarital, or both, is determined by the source of the funds used to acquire the property.
>
> . . .

. . . Tracing is defined as the process of tracking property's ownership or characteristics from the time of its origin to the present. In the context of tracing nonmarital property, when the original property claimed to be nonmarital is no longer owned, **the nonmarital claimant must trace** the previously owned property into a presently owned specific asset. The concept of tracing is judicially created and arises from KRS 403.190(3)'s presumption that all property acquired after the marriage is marital property unless shown to come within one of KRS 403.190(2)'s exceptions. A party claiming that property, or an interest therein, acquired during the marriage is nonmarital bears the burden of proof.

(Emphases added) (internal quotation marks, footnotes, and citations omitted).

We owe a high level of deference to properly supported findings of the trial court. "[W]e may not disturb the trial cour's rulings on property-division issues unless the trial court has abused its discretion. . . . [F]actual findings . . . are reviewed under the clearly erroneous standard and the ultimate legal conclusion denominating the item as marital or nonmarital is reviewed de novo." *Smith v. Smith*, 235 S.W.3d 1, 6 (Ky. App. 2006).

Mike contends that the Nonny Lynn Drive property was not a marital asset when the divorce was filed; *i.e.*, that he and Nora had divested themselves of the property years earlier and that it was Billie who sold it. Mike submits that including the sum of $867,500.00 for purposes of equitable distribution is clearly erroneous and an abuse of discretion. We disagree.

-11-

"[F]raudulent or dissipative transfers of marital property may be avoided or otherwise counteracted so as to vindicate a spouse's interest in support or in an equitable division of the marital estate." *Gripshover v. Gripshover*, 246 S.W.3d 460, 466 (Ky. 2008). In *Gripshover*, our Supreme Court cited *Solomon v. Solomon*, 383 Md. 176, 857 A.2d 1109 (2004), which explains that:

> [g]enerally, property disposed of before trial cannot be marital property. An exception to the general rule has been recognized when a court finds that property was intentionally dissipated in order to avoid inclusion of the property towards consideration of a monetary award.

*Solomon*, 857 A.2d at 1124 (internal quotation marks and citations omitted).

*Duffy v. Duffy*, 540 S.W.3d 821, 828-29 (Ky. App. 2018), discusses the concept of dissipation additionally:

> Dissipation must be demonstrated by a preponderance of the evidence, and the family court's findings of fact are upheld if supported by substantial evidence. *Kleet v. Kleet*, 264 S.W.3d 610, 617 (Ky. App. 2007). The family court acts as fact-finder and possesses the sole authority to assess the credibility of witnesses. If dissipation is found to have occurred, "the court will deem the wrongfully dissipated assets to have been received by the offending party prior to the distribution." *Brosick*, 974 S.W.2d at 500. The equitable relief fashioned by the court must bear some relation to the evidence presented.

In the case before us, the trial court found that the Nonny Lynn property was marital; that it was sold in violation of a status quo order; that Mike had created a significant disparity in the distribution of assets by selling the marital

-12-

Nonny Lynn property in violation of a status quo court order; and that Mike and his mother acted in concert and bad faith regarding the Nonny Lynn property, which was transferred without Nora's receiving any benefit. We agree with Nora that the trial court acted within its discretion to accept $867,500.00 as the value of the Nonny Lynn Drive property based upon the testimony presented at trial. The trial court divided that value equally between the parties. The trial court's findings have a substantial evidentiary foundation and satisfy the holding in *Duffy*, *supra*, requiring that the remedy crafted by the court be related to evidence duly presented. We find no abuse of discretion.

Mike contends that the trial court's finding that the parties owned machinery and equipment valued at $75,000.00 is clearly erroneous. He provides no reference to the record, nor does he cite any authority.[3] "[B]are assertions of legal error are insufficient to warrant review." *Burgess v. Austin*, 658 S.W.3d 487, 491 (Ky. App. 2022).

Mike asserts that the trial court erred in finding that the Edward Jones account should be valued $327,061.36. That is the amount that Mike received

---

[3] Appellant's brief was submitted in December 2022, before the Kentucky Rules of Appellate Procedure (RAP) took effect. Under either version of the rule, Appellant's brief is deficient. Kentucky Rule of Civil Procedure (CR) 76.12(4)(c)(v) required "ample supportive references to the record and citations of authority pertinent to each issue of law . . . ." Now RAP 32(A)(4) requires "ample references to the specific location in the record and citations of authority pertinent to each issue of law . . . ."

when he cashed it out.  The trial court's finding is supported by substantial evidence.  The trial court was aware of Michael's testimony that he liquidated the account to pay bills.  The trial court divided the value of the account equally between the parties.  Again, we find no error.

Mike contends that the trial court made a specific finding that the Hobart residence was his non-marital property,[4] that it was sold for $149,000.00, but that he received no credit for these funds (which he claims should have been set aside as his separate property).  However, Mike was not entitled to a credit because **he failed to trace** any "previously owned property into a presently owned specific asset."  *Sexton*, *supra*.  We find no error.

Mike also argues that the trial court erred in assigning a value of $362,000.00 to Rutland Road by splitting the difference between the parties' appraisals.  Because once again he cites no authority to support this argument, we deem it to have been waived.

> [A]n alleged error may be deemed waived where an appellant fails to cite any authority in support of the issues and arguments advanced on appeal.  Without any argument or citation of authorities, an appellate court has little or no indication of why the assignment represents an error.  It is not our function as an appellate court to research and construct a party's legal arguments, and we

---

[4] Michael refers us to pages 394-405 of the record on appeal; that citation is simply the trial court's December 16, 2019, order *in its entirety*.  We do not recall such a finding in our line-by-line review of the trial court's order.

-14-

decline to do so here.

*Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005) (internal quotation marks and citations omitted).

Mike also claims that his mother, Billie, should have been joined as a party, citing *Gripshover*, *supra*. In *Gripshover*, the wife argued that the lack of a *bona fide* gift rendered an irrevocable trust a sham. The Supreme Court noted that the wife did not join the real estate partnership, the partners, the trustee, or the beneficiaries -- all of whom would be necessary parties *to an action seeking to avoid the partnership or the trust*. *Gripshover* is clearly distinguishable, and nothing in our reading of it suggests that Billie Kelly should have been joined as a party in the case before us, which can be resolved without her presence as a party.

Last of all, Mike questions how he could be ordered to pay $10,000.00 in attorney fees to a spouse who has just been awarded **all** of the parties' assets. We note, however, that the trial court awarded each party a 50% share of the marital assets. We find no error in the court's exercise of its discretion on this issue.

We affirm the judgment of the Jefferson Circuit Court.


ALL CONCUR.

-15-

BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Thomas M. Denbow                        Mary Rives Chauvin
Louisville, Kentucky                    Louisville, Kentucky